# UNITED STATES NAVY–MARINE CORPS COURT OF CRIMINAL APPEALS

_____

No. 201700133

_____

**J.M.**
**Petitioner**

v.

**BETHANY L. PAYTON-O'BRIEN**
**CAPT, JAGC, U.S. Navy**
**Military Judge**
**Respondent**

**And**

**ADAM J. RAVENSCRAFT**
**Seaman (E-3), U.S. Navy**
**Real Party In Interest**

_____

**Review of Petition for Extraordinary Relief in the Nature of a Writ of *Mandamus***

Military Judge: Captain Bethany L. Payton-O'Brien, JAGC, USN.
Convening Authority: Commander, Navy Region Southwest, San Diego, CA.
For Petitioner: Lieutenant Andrew T. Jennings, JAGC, USN.

_____

28 June 2017

_____

Before MARKS, RUGH, and JONES, *Appellate Military Judges*

_____

**PUBLISHED OPINION OF THE COURT**

_____

JONES, Judge:

J.M. petitions this court for extraordinary relief in the nature of a writ of *mandamus*. She seeks relief from a lower court ruling ordering the production and disclosure of her privileged mental health records based on

the now-excised, constitutional exception to the psychotherapist-patient privilege, MILITARY RULE OF EVIDENCE (MIL. R. EVID.) 513, MANUAL FOR COURTS-MARTIAL, UNITED STATES (2016 ed.). On 21 April 2017, we granted a stay, and now find the petitioner has met her burden to demonstrate that extraordinary relief is warranted. The writ is granted.

We hold that a military judge may not order production or release of MIL. R. EVID. 513 privileged communications when the privilege is asserted by the holder of the privilege unless the requested information falls under one of the enumerated exceptions to the privilege listed in MIL. R. EVID. 513(d). However, when the failure to produce said information for review or release would violate the Constitution, military judges may craft such remedies as are required to guarantee a meaningful opportunity to present a complete defense.

## I. BACKGROUND

On 10 November 2016, Interior Communications Electrician Seaman Adam Ravenscraft, U.S. Navy, the Real Party in Interest (RPI), was arraigned at a general court-martial on three specifications of rape, one specification of sexual assault, and four specifications of assault, in violation of Articles 120 and 128, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 920 and 928. The alleged misconduct occurred on divers occasions between August 2006 and March 2014, and all involved the alleged victim.

On 27 December 2016, the RPI moved to compel production of all mental health records of the petitioner or, in the alternative, for *in camera* review of the records.[1] The government and the petitioner's victim's legal counsel (VLC) opposed the motion. The parties litigated the motion in a closed-session of court on 16 February 2017.

On 9 March 2017, the military judge granted the defense motion for *in camera* review of the mental health records from three psychiatric visits the petitioner made to three different hospitals. After reviewing the records, the military judge *sua sponte* ordered, for *in camera* review, production of the petitioner's outpatient therapy records from two additional mental health providers. After reviewing over 750 pages of mental health records, the military judge identified and heavily redacted 75 pages for potential release to the defense. The military judge then issued "Qualified Protective Orders for all hospital admission records as well as the various outpatient providers."[2]

---

[1] The motion was made pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), Article 46, UCMJ, and MIL. R. EVID. 513. *But see* note 25, *infra*.

[2] Appellate Exhibit (AE) LXXII at 2 (citations omitted).

The military judge then informed the VLC that she would release the 75 pages to the defense the following week, on 24 April 2017. She also provided the VLC the opportunity to review the records—in their entirety—prior to the planned release, and advised the VLC he could file an *ex parte* brief with the court to preserve any objections to the release. In response, on 21 April 2017, the VLC filed this petition, alleging the military judge erred in ordering production of the records without finding they qualified for release under one of the seven enumerated exceptions to the privilege listed in MIL. R. EVID. 513(d). On 24 May 2017, this court received the transcript of the proceedings.

## A. The military judge's 9 March 2017 ruling

On 9 March 2017, the military judge granted the defense motion for *in camera* review of mental health records from three psychiatric visits. The military judge found, *inter alia*, the following facts:

> 1. . . . Ms. JM is suffering from a number of psychological conditions . . . .
>
> . . . .
>
> 11. Dr [S], the defense expert consultant testified that Ms. JM's history . . . could reflect mental health issues, not associated with this case, and she indicated it would be essential to rule out any and all mental health conditions preceding the events in this case . . . .[3]

The military judge applied our three-part test from *United States v. Klemick*, 65 M.J. 576, 580 (N-M. Ct. Crim. App. 2006),[4] rather than using the four-part test now required under MIL. R. EVID. 513. She also determined that the defense's evidence did not meet one of MIL. R. EVID. 513's seven listed exceptions. However, she concluded that due process required piercing

---

[3] AE XLIV at 2, 3-4.

[4] The *Klemick* test requires that the following are answered:

> "(1) [D]id the moving party set forth a specific factual basis demonstrating a reasonable likelihood that the requested privileged records would yield evidence admissible under an exception to MIL. R. EVID. 513; (2) [I]s the information sought merely cumulative of other information available; and (3) [D]id the moving party make reasonable efforts to obtain the same or substantially similar information through non-privileged sources?"

*Klemick* 65 M.J. at 580.

the privilege to "guarantee [the defense] 'a meaningful opportunity to present a complete defense.'"[5] The military judge further concluded:

> Following the logic of the *Klemick* court, it is a reasonable conclusion that the inpatient records of Ms. JM would contain: information related to an event and the reactions and perceptions of Ms. JM; information concerning mental health issues that have a bearing on Ms. JM's recollection of the events in question; information concerning medications, if any, having an effect on Ms. JM's ability to perceive or recollect currently and in the past; and information . . . [that may reveal] her sensitivity to physical assault.[6]

## B. The military judge's 22 March 2017 ruling

On 22 March 2017, after reviewing the ordered records *in camera*, the military judge, *sua sponte*, ordered production of the petitioner's outpatient therapy records from two other mental health providers for *in camera* review. Citing the same law, and using the same reasoning as her previous ruling, the military judge concluded that:

> [I]t is a reasonable conclusion that the outpatient counseling records of Ms. JM would contain: information related to an event and the reactions and perceptions of Ms. JM; information concerning mental health issues that have a bearing on Ms. JM's recollection or perceptions of the events in question; and information concerning medications, if any, having an effect on Ms. JM's ability to perceive or recollect currently and in the past.[7]

## C. The military judge's 21 April 2017 ruling

On 21 April 2017, the military judge released a more comprehensive ruling which incorporated her two previous rulings and made additional findings of fact. Those findings included, *inter alia*: (1) that "Ms. JM's psychological counseling has been ongoing . . . , during and after the charged offenses"; (2) that "Ms. JM was taking [medications that may have some bearing on the case]"; and (3) Ms. JM's in-court testimony belied how many times she had been admitted for psychiatric care.[8]

---

[5] *Id.* at 6 (quoting *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006)).

[6] *Id.*

[7] AE XLIX at 4.

[8] AE LXXII, Findings of Fact 3 and 8.

The military judge found that "Ms. J.M. does have a mental condition that is relevant or has or is prescribed medication that might have some bearing on this case. She has also made statements that could have a bearing on her credibility."[9] She further found that the defense did not "have any other non-privileged access to Ms. J.M.'s bias, motive to fabricate, inconsistent statements, or credibility as a witness, that can be used to impeach her at trial."[10] The military judge also compared MIL. R. EVID. 513's rule of privilege with MIL. R. EVID. 412's rule of relevance: "The exception at issue in this case is the constitutionally required exception formerly found in [MIL. R. EVID.] 513(d)(8). Though there is no case law establishing the 'constitutionally required' standard in [MIL. R. EVID.] 513, the same exception appears in [MIL. R. EVID.] 412(b)(1)(C)."[11] She then continued to apply the rationale of the MIL. R. EVID. 412 relevance rule by citing the test for constitutionality mentioned in *United States v. Ellerbrock*, 70 M.J. 314, 318 (C.A.A.F. 2011).[12]

Finally, the military judge concluded, by a preponderance of the evidence, that:

> 1. The Defense showed a specific factual basis demonstrating a reasonable likelihood that the records would yield evidence admissible under an exception to the privilege;
>
> 2. The requested information meets the former enumerated exceptions [sic] under subsection [MIL. R. EVID.] 513(d)(8);
>
> 3. The information sought is not merely cumulative of other information available; and
>
> 4. The Defense has made reasonable efforts to obtain the same or substantially similar information through non-privileged sources;
>
> 5. Mrs. [sic] J.M.'s mental health records are relevant, necessary and material. Their disclosure is vital to the accused's defense, and thus constitutionally required under either [RULE FOR COURTS-MARTIAL (R.C.M.)] 701 or [MIL. R. EVID.] 513;

---

[9] *Id.* at 10.

[10] *Id.*

[11] *Id.* at 9.

[12] *Id.* The military judge stated, "Under that rule, the evidence is constitutionally required if the defense can articulate how the evidence sought (1) is relevant, (2) is material, and (3) has probative value that outweighs the danger of unfair prejudice." *Id.*

6. The accused's constitutional right to a fair trial will be impeded if not disclosed to the defense.[13]

## II. STANDARD OF REVIEW

Pursuant to Article 6b, UCMJ, this court is empowered to issue such writs of *mandamus* as are necessary to enforce certain statutory and procedural rights of victims, including MIL. R. EVID. 513.[14] A writ of *mandamus* is "a drastic instrument which should be invoked only in truly extraordinary situations." *United States v. Labella*, 15 M.J. 228, 229 (C.M.A. 1983) (citations omitted). The writ has traditionally been used "to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so." *Roche v. Evaporated Milk Association*, 319 U.S. 21, 26 (1943) (citations omitted). Only exceptional circumstances amounting to a "clear abuse of discretion or usurpation of judicial power" justify the invocation of the writ. *Bankers Life Casualty Co. v. Holland*, 346 U.S. 379, 383 (1953) (citation and internal quotation marks omitted).

To prevail, a petitioner seeking an extraordinary writ must show that: "(1) there is no other adequate means to attain relief; (2) the right to issuance of the writ is clear and indisputable; and (3) the issuance of the writ is appropriate under the circumstances." *Hasan v. Gross*, 71 M.J. 416, 418 (C.A.A.F. 2012) (citing *Cheney v. United States Dist. Court for D.C.*, 542 U.S. 367, 380-81 (2004)).

## III. DISCUSSION

MIL. R. EVID. 513 protects privileged communications between a psychotherapist and his or her patient:

> (a) General Rule. A patient has a privilege to refuse to disclose and to prevent any other person from disclosing a confidential communication made between the patient and a psychotherapist or an assistant to the psychotherapist, in a case arising under the Uniform Code of Military Justice, if such communication was made for the purpose of facilitating diagnosis or treatment of the patient's mental or emotional condition.

MIL. R. EVID. 513(a).

---

[13] *Id.* at 11.

[14] In this opinion, we adopt the use of the term "victim" to describe those *alleging* they are victims of crimes.

Prior to the 2015 National Defense Authorization Act (NDAA), there were eight exceptions to the privilege:

(1) when the patient is dead;

(2) when the communication is evidence of child abuse or of neglect, or in a proceeding in which one spouse is charged with a crime against a child of either spouse;

(3) when federal law, state law, or service regulation imposes a duty to report information contained in a communication;

(4) when a psychotherapist or assistant to a psychotherapist believes that a patient's mental or emotional condition makes the patient a danger to any person, including the patient;

(5) if the communication clearly contemplated the future commission of a fraud or crime or if the services of the psychotherapist are sought or obtained to enable or aid anyone to commit or plan to commit what the patient knew or reasonably should have known to be a crime or fraud;

(6) when necessary to ensure the safety and security of military personnel, military dependents, military property, classified information, or the accomplishment of a military mission;

(7) when an accused offers statements or other evidence concerning his mental condition in defense, extenuation, or mitigation, under circumstances not covered by R.C.M. 706 or MIL. R. EVID. 302. . . . ; or

(8) *when admission or disclosure of a communication is constitutionally required.*

MIL. R. EVID. 513(d), SUPP. TO MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.) (emphasis added).

However, the 2015 NDAA substantially broadened the protections of the privilege by eliminating the "constitutionally required" exception,[15] a change that was subsequently adopted by the President.[16]

---

[15] *See* 2015 NDAA, Pub. L. No. 113-291, § 537, 128 Stat. 3292, 3369 ("Not later than 180 days after the date of the enactment of this Act, Rule 513 of the Military Rules of Evidence shall be modified as follows . . . . (2) To strike the current exception to the privilege contained in subparagraph (d)(8) of Rule 513.").

As a result, under the revised rule applicable to this case, the military judge must find by a preponderance of the evidence that the moving party has met each of the following prongs prior to ordering *in camera* review:

(A) a specific factual basis demonstrating a reasonable likelihood that the records or communications would yield evidence admissible under an exception to the privilege;

(B) *that the requested information meets one of the enumerated exceptions under subsection (d) of this rule*;

(C) that the information sought is not merely cumulative of other information available; and

(D) that the party made reasonable efforts to obtain the same or substantially similar information through non-privileged sources.

MIL. R. EVID. 513(e)(3)(A)-(D), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2016 ed.) (emphasis added).

## A. Inviolability of the privilege

The petitioner encourages us to declare the privilege absolute—outside of the extant exceptions—without consideration for the constitutional concerns of the RPI. This position has been embraced by a minority of jurisdictions,[17] and we accept that position, in part. While noting the Supreme Court's general guidance that privileges should be interpreted narrowly whenever possible,[18] we find the specific direction from Congress and the President on this privilege to be clear-cut.

---

[16] *See* Exec. Order No. 13696, 80 Fed. Reg. 35,783, 35,819 (17 Jun 2015) ("Mil R. Evid. 513(d)(8) is deleted.").

[17] *See* Jennifer L. Hebert, *Mental Health Records in Sexual Assault Cases: Striking a Balance to Ensure a Fair Trial for Victims and Defendants*, 83 TEX. L. REV. 1453, 1466 (2005) (noting that five states have a counselor-patient privilege which does not permit any release for court proceedings); *see also* Major Cormac M. Smith, *Applying the New Military Rule of Evidence 513: How Adopting Wisconsin's Interpretation of the Psychotherapist Privilege Protects Victims and Improves Military Justice*, 2015 ARMY LAW. 6, 12 (2015) (citing Federal Courts' disparate treatment of the psychotherapist-patient privilege in criminal trials).

[18] *See Trammel v. United States*, 445 U.S. 40, 50 (1980) (stating that privileges should be strictly construed because they contravene the principle that the public has a right to every person's evidence.)

After observing military judges routinely breach the privilege in sexual assault cases,[19] Congress and the President attempted to substantially strengthen the privilege by removing the constitutional exception from the rule and adding the separate requirement that any piercing of the privilege meet one of the remaining seven enumerated exceptions for *in camera* review. We agree with our sister court that "the President was likely at the apex of his authority in implementing MIL. R. EVID. 513 [to remove the constitutional exception] as he acted in his constitutional role as Commander in Chief and under a specific legislative direction." *DB v. Lippert*, No. 20150769, 2016 CCA LEXIS 63, at *26 n.14, unpublished op. (A. Ct. Crim. App. 1 Feb 2016) (citing *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 635-37, (1952) (Jackson, J., concurring) ("When the President acts pursuant to an express or implied authorization of Congress, his authority is at its maximum, for it includes all that he possesses in his own right plus all that Congress can delegate."). The policy decision of Congress and the President is clear: the psychotherapist-patient privilege should be protected to the greatest extent possible.

It is also clear from the military judge's rulings that she understood the change in the law, because she concluded that "[t]he requested information meets the *former* enumerated exceptions [sic] under subsection [MIL. R. EVID.] 513(d)(8)."[20] Yet she also stated in her final ruling: "The Defense showed a specific factual basis demonstrating a reasonable likelihood that the records would yield evidence *admissible under an exception to the privilege*[.]"[21] These contradictory statements obfuscate the privilege-due process conflict at stake and create a legal fiction.

For this proposition, the petitioner correctly relies on *United States v. Custis*, 65 M.J. 366 (C.A.A.F. 2007), holding that the military judge cannot add an exception to a military rule of privilege. In *Custis*, the Court of Appeals for the Armed Forces (CAAF) decided whether military courts had the authority to apply a common law exception to the marital privilege, when that exception was not contained within MIL. R. EVID. 504 (Marital Privilege). Although every federal circuit to address the issue had found a common law crime/fraud exception, the CAAF refused to expand MIL. R.

---

[19] "This attempt to strengthen the privilege was taken to reverse what Congress perceived as a rising tide of privileged records being routinely reviewed in military courts." Major Michael Zimmerman, *Rudderless: 15 Years and Still Little Direction on the Boundaries of Military Rule of Evidence 513* [hereinafter *Rudderless*] 223 MIL. L. REV. 312, 335 (2015) (citations omitted).

[20] AE LXXII, Conclusion of Law 2 (emphasis added).

[21] *Id.*, Conclusion of Law 1 (emphasis added).

EVID. 504: "the authority to add exceptions to the codified privileges within the military justice system lies not with this Court or the Courts of Criminal Appeal, but with the policymaking branches of government." *Id.* at 369. Therefore, any application of the former MIL. R. EVID. 513(d)(8) constitutional exception by the military judge was improper. Adopting the military judge's rationale would force us to ignore the plain language of the rule, the obvious intent of both Congress and the President, and binding precedent. We cannot.

## B. A meaningful opportunity to present a complete defense

While we decline to wholly override the psychotherapist-patient privilege, we may not allow the privilege to prevail over the Constitution. In other words, the privilege may be absolute outside the enumerated exceptions, but it must not infringe upon the basic constitutional requirements of due process and confrontation.[22] As our sister court recently stated:

> If the Constitution demands the "admission or disclosure" of otherwise privileged communications, the deletion of MIL. R. EVID. 513(d)(8) does not limit the Constitution's reach into the rule. Put differently, the Constitution is no more or less applicable to a rule of evidence because it happens to be specifically mentioned in the Military Rules of Evidence.

*LK v. Acosta & Sanchez*, __ M.J. __ No. 20170008, 2017 CCA LEXIS 346, *7-8 (A. Ct. Crim. App. 24 May 2017) (citation omitted).

Some commentators have correctly argued that removal of the constitutional exception is inconsequential insofar as its removal purports to extinguish due process and confrontation rights.[23] This position simply embraces what is self-evident to all: constitutional rights prevail over statutory and evidentiary rules.[24] "Constitutional rights generally apply to members of the armed forces unless by their express terms, or the express

---

[22] U.S. CONST. amend. VI and U.S. CONST. amend. XIV. Any communication or record Congress and the President decide should be privileged must be weighed against the original public meaning of the constitutional guarantees of due process and confrontation.

[23] *See* Zimmerman, *Rudderless*, 223 MIL. L. REV. at 314, n. 10 (citing STEPHEN A. SALTZBURG ET. AL., 1 MILITARY RULES OF EVIDENCE MANUAL § 412.02 (7th ed., Matthew Bender & Co. 2011) and CHRISTOPHER B. MUELLER & LAIRD C. KIRKPATRICK, FEDERAL EVIDENCE § 4:81, at 306 (3d ed. 2007) for the proposition that removing the constitutional exception from MIL. R. EVID. 412 was superfluous and unnecessary as the rule was always subordinate to the Constitution, therefore, the same rationale applies to MIL. R. EVID. 513, even though the latter is a rule of privilege vice a rule of relevance. *But see* note 25, *infra*.

[24] *Id.*

language of the Constitution, they are inapplicable." *United States v. Marcum*, 60 M.J. 198, 200 (C.A.A.F. 2004). Indeed, the CAAF has ruled that evidentiary rules must cede to the constitutional needs of an accused. *United States v. Gaddis*, 70 M.J. 248, 253 (C.A.A.F. 2011) (holding that evidentiary rule prohibiting evidence of a victim's sexual behavior or predisposition cannot limit the introduction of evidence that is required to be admitted by the Constitution).[25]

We recognize that there is scant Supreme Court case law defining the boundaries between privileges and constitutional rights of the accused.[26] Although we know that constitutional rights prevail over statutory and evidentiary rules, we tread carefully in seeking to define what qualifies as constitutionally necessary for the defense.

In *Davis v. Alaska*, 415 U.S. 308 (1974), the Supreme Court held that the state's policy interest in protecting the confidentiality of juvenile records violated the Confrontation Clause because it prohibited the defense from effectively cross-examining a key witness on bias. In *Holmes v. South Carolina*, 547 U.S. 319 (2006), a defendant tried for murder and related crimes sought to present evidence of a third-party's guilt, but was prohibited by a state evidentiary rule which prohibited such evidence if the government's forensic evidence was strong. The Supreme Court held that:

---

[25] We caution military practitioners not to conflate the constitutionally required standard envisioned in MIL. R. EVID. 412 with MIL. R. EVID. 513. The former permits the admission of evidence where its exclusion would violate the constitutional rights of the accused. In contrast, when determining whether *in camera* review or disclosure of privileged materials is constitutionally required under MIL. R. EVID. 513, the military judge should determine whether infringement of the privilege is required to guarantee "a meaningful opportunity to present a complete defense." *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006) (citation and internal quotation marks omitted). Also, practitioners should avoid citing to rules for discovery—R.C.M. 701 or Article 46, UCMJ—as grounds to pierce the psychotherapist-patient privilege. R.C.M. 701(f) warns that "[n]othing in this rule shall be construed to require the disclosure of information protected from disclosure by the Military Rules of Evidence." Additionally, R.C.M. 703(f)(2) declares that "a party is not entitled to the production of evidence . . . not subject to compulsory process." "It is axiomatic that if a privileged communication is disclosed whenever it would be subject to the rules governing discovery then there [would be] no privilege at all." *Lippert*, 2016 CCA LEXIS 63 at *32.

[26] In fact, one commentator has pointed out that the Supreme Court has barely "scratched the surface" in addressing the conflict between privileges and due process rights. Clifford S. Fishman*, Defense Access to A Prosecution Witness's Psychotherapy or Counseling Records,* [hereinafter *Access*) 86 OR. L. REV. 1, 4 (2007).

> [S]tate and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials. . . . This latitude, however, has limits. Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation Clauses of the Sixth Amendment, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense. . . . This right is abridged by evidence rules that infring[e] upon a weighty interest of the accused and are arbitrary or disproportionate to the purposes they are designed to serve.

*Id.* at 324 (alterations in original) (internal citations and quotation marks omitted).

Therefore, noble goals and notable policy concerns cannot trump the RPI's right to "a meaningful opportunity to present a complete defense." *Id.*[27] Citing *Holmes* in a previous review of a petition for a writ of *mandamus*, we stated "when determining whether *in camera* review or disclosure of privileged materials is constitutionally required under MIL. R. EVID. 513, the military judge should determine whether *infringement of the privilege* is required to guarantee 'a meaningful opportunity to present a complete defense.'" *EV v. Robinson and Martinez*, No. 201600057, slip ord. at 1 n.2 (N-M. Ct. Crim. App. 25 Feb 2016) (quoting *Holmes*, 547 U.S. at 324 (emphasis in original)). Despite erring in her application of MIL. R. EVID. 513, the military judge in this case properly included this same language in her ruling.

It is impossible to define all of the situations in which the privilege's purpose would infringe upon an accused's weighty interests, like due process and confrontation. However, courts have allowed discovery of privileged information in the following areas: (1) recantation or other contradictory conduct by the alleged victim; (2) evidence of behavioral, mental, or emotional difficulties of the alleged victim; and (3) the alleged victim's inability to accurately perceive, remember, and relate events.[28]

---

[27] *See United States v. Dimberio*, 56 M.J. 20, 24 (C.A.A.F. 2001) ("It is undeniable that a defendant has a constitutional right to present a defense.")

[28] *See, Access*, 86 OR. L. REV. at 41-45. The second and third areas, in particular, illustrate why this privilege may be more susceptible to waiver than other privileges. These areas go to the very essence of witness credibility and reliability—potential defects in capacity to understand, interpret, and relate events. Additionally, these areas intersect with the medical community's ability to interpret that credibility. Juxtapose this with the priest-penitent privilege, for example, which is primarily concerned with spiritual assistance, and does not implicate those same concerns of witness competency or credibility.

This non-exhaustive list illustrates situations in which the privacy rights of the victim may yield to the constitutional rights of the accused. In these scenarios, serious concerns may be raised regarding witness credibility—which is of paramount importance—and may very well be case-dispositive.[29]

## C. Judicial remedies when the privilege is not waived

The procedure to determine the admissibility of the victim's records or communications under MIL. R. EVID. 513(e)(2) begins in a closed hearing, where the military judge applies the same test used for *in camera* review found in MIL. R. EVID. 513(e)(3). If the moving party satisfies all the prongs, but meets no enumerated exception under MIL. R. EVID. 513(d), then the military judge determines whether the accused's constitutional rights still demand production or disclosure of the privileged materials. If so, then the military judge gives the victim an opportunity to waive the privilege for *in camera* review by the military judge.

If the victim elects to waive the privilege *only* for *in camera* review, the military judge reviews the materials for possible disclosure. If the military judge continues to find that the accused's constitutional rights demand disclosure of certain materials to the defense, she earmarks those items for review by the victim or VLC.[30] If, after review, the victim or VLC elect to further waive the privilege, the materials are provided to the defense.

This procedure allows the military judge to scrupulously honor the victim's choice of whether—and how much—to waive the privilege. The military judge never orders the production or release of materials that do not fall under an enumerated exception to the privilege. Instead, the victim retains the authority to assert the privilege at any time along the process. However, if the victim elects not to waive the privilege after the military judge has determined it is constitutionally necessary, then the military judge may consider remedial measures.

Judicial remedies are essential to the military judge's duty to ensure a constitutionally fair trial for an accused. The CAAF has stated that "'a judge

---

[29] This is particularly true for cases of sexual assault, where most often, only the accuser and the accused are present and there is little or no corroborating physical evidence. Judging the credibility of the accuser is crucial in these situations, as reliability may well determine guilt or innocence. The crucible of cross-examination is a powerful tool for an accused to test an accuser's account. But in appropriate cases, waiver of the psychotherapist-privilege may be necessary to satisfy the accused's rights to due process and confrontation.

[30] Any release of information would then be "narrowly tailored" to only the specific records or communications (or portions thereof) that were shown to be necessary by the moving party. *See* MIL. R. EVID. 513(e)(4).

is ultimately responsible for the control of his or her court and the trial proceedings,' and '[p]roper case management during a trial, necessary for the protection of an accused's due process rights and the effective administration of justice, is encompassed within that responsibility.'" *United States v. Bowser*, 74 M.J. 326 (C.A.A.F. 2015) (summary disposition) (alteration in original) (quoting *United States v. Vargas*, 74 M.J. 1, 8 (C.A.A.F. 2014)).

In speaking of the conflict between the removal of the constitutional exception under MIL. R. EVID. 513 and the constitutional right of an accused to a fair trial, one learned treatise offers a possible solution:

> To the degree that access to otherwise privileged materials is constitutionally necessary for a fair trial for the accused, clear confrontation and due process issues are raised. . . . Congress enacted the removal of the constitutional exception and protection of victims was certainly a legitimate reason for doing so. [But] [i]t is possible to both effectuate the Congressional intent and to protect the accused's constitutional rights. If the accused constitutionally needs access to and use of privileged materials not releasable under any of the remaining exceptions, the military judge must abate (terminate) the proceedings, NOT order disclosure of the privileged material.

FRANCIS A. GILLIGAN AND FREDRIC I. LEDERER, COURT MARTIAL PROCEDURE § 20-32.10 (4th ed. Matthew Bender & Co. 2015) (emphasis in original).

This proposed solution is a good starting point for our analysis, although its lone remedy of abatement is too restrictive, and it fails to account for a possible waiver of the privilege by its holder. The military judge needs more precise remedial measures than merely abatement to fashion an appropriate remedy when she concludes privileged records or communications are necessary and the victim elects not to waive the privilege.

We look to MIL. R. EVID. 505 (Classified information) for guidance on appropriate judicial remedies when a party refuses to allow disclosure of privileged information after a military judge deems the information necessary for trial.[31] This rule provides that:

> (A) If the military judge determines that alternatives to full disclosure may not be used and the prosecution continues to object to disclosure of the information, the military judge must

---

[31] This exact language is also used in MIL. R. EVID. 506(j)(4)(A), which concerns the disclosure of government information that is not classified.

issue any order that the interests of justice require, including but not limited to, an order:

(i) striking or precluding all or part of the testimony of a witness;

(ii) declaring a mistrial;

(iii) finding against the government on any issue as to which the evidence is relevant and material to the defense;

(iv) dismissing the charges, with or without prejudice; or

(v) dismissing the charges or specifications or both to which the information relates.

MIL. R. EVID. 505(j)(4)(A).

Balancing the victim's and accused's rights under MIL. R. EVID. 513 also requires a variety of precise remedies, because the constitutional facets of each case will be so diverse. For example, simply abating the proceedings would not be appropriate for a case in which an accused faces multiple charges, and the victim's testimony does not relate to all of the charges. Or the issues presented may call for allowing the victim to testify regarding some charges but not others. We are also mindful that the judicial remedies under MIL. R. EVID. 505 were intended to incentivize the government to cooperate in providing classified information. However, the compelling rationale for using remedies in MIL. R. EVID. 505 cases is the same for using them in MIL. R. EVID. 513 cases—protecting the accused's constitutional rights.

Using the remedies in MIL. R. EVID. 505(j)(4)(A) as our guide, there are several possible options when a victim elects to preserve the psychotherapist-patient privilege after a military judge deems disclosure constitutionally necessary. The military judge may: (1) strike or preclude all or part of the witness's testimony; (2) dismiss any charge or charges, with or without prejudice; (3) abate the proceedings permanently, or for a time certain to give the witness an opportunity to reconsider; or (4) declare a mistrial.

In the vast majority of cases, the decision to preserve the privilege will be made by a victim prior to the trial commencing. However, striking a witness's testimony might be appropriate, for example, in the unusual situation when the issue of privileged information arises in the middle of the trial, after the witness has already testified to all or some matters. Precluding part of the testimony might be appropriate in situations where the witness testifies as to more than one charge, and the military judge determines that the privileged information is only constitutionally required for one or more other charges.

Dismissing charges, with or without prejudice, may be more appropriate than precluding testimony of the victim in certain cases. For example, simply prohibiting the testimony of the victim may be wholly insufficient when the military judge has found that the lack of privileged information will infringe upon a weighty interest of the accused and is essential for the accused to receive a meaningful opportunity to present a complete defense. In these situations, dismissing the charges may be the appropriate action. Dismissing the charges with prejudice has been upheld by the CAAF—even under the rubric of discovery—when a party has refused to turn over information for *in camera* review.[32]

Alternatively, the military judge may decide to abate the proceedings permanently, or for a time certain, to give the victim an opportunity to reconsider the election not to waive the privilege. This option emphasizes that the victim always holds the key to the privilege and that the victim's rights will be protected by the military justice system to the greatest extent possible, even if that results in an abatement of the entire court-martial.

Granting a mistrial is a possible, but uncommon remedy. R.C.M. 915(a) outlines the standard to be used when evaluating whether to grant a mistrial:

> The military judge, may, as a matter of discretion, declare a mistrial when such action is manifestly necessary in the interest of justice because of circumstances arising during the proceedings which cast substantial doubt upon the fairness of the proceedings. A mistrial may be declared as to some or all charges, and as to the entire proceedings or as to only the proceedings after findings.

R.C.M. 915(a). Furthermore, the non-binding Discussion cautions that "[t]he power to grant a mistrial should be used with great caution, under urgent circumstances, and for plain and obvious reasons."

To be clear, the foregoing remedies are not crude devices to punish the petitioner for electing to preserve the privilege. Rather, they are precise

---

[32] In *United States v. Bowser*, 73 M.J. 889 (A.F. Ct. Crim. App. 2014), the military judge ordered the trial counsel to produce witness interview notes for an *in camera* inspection because the military judge suspected the government was not providing adequate discovery. The trial counsel balked, and the military judge dismissed all charges, with prejudice. The CAAF affirmed, endorsing the military judge's remedy. *United States v. Bowser*, 74 M.J. 326, 326 (C.A.A.F. 2015) (summary disposition) ("Because a judge has broad discretion and a range of choices in crafting a remedy to cure discovery violations and ensure a fair trial, this Court will not reverse so long as his or her decision remains within that range.")

judicial tools necessary to balance the petitioner's privilege against the RPI's constitutional rights.

## IV. CONCLUSION

The petitioner having demonstrated that she has no other adequate means to attain relief, the right to issuance of the writ is clear and indisputable, and the issuance of the writ is appropriate.

The writ of *mandamus* is the only adequate means of relief for the petitioner. If she waits for the normal course of potential appellate review, the privilege will be further vitiated, and additional harm will result when the military judge releases the privileged records to the defense.

The right to issuance of the writ is clear and indisputable. Despite the plain language of MIL. R. EVID. 513(e)(3)(B)—forbidding *in camera* review of psychotherapist-patient records sans meeting an enumerated exception to the privilege—the military judge ordered the petitioner's psychotherapist records be produced and released.

Under the circumstances of this case, we find that issuance of a writ of *mandamus* is appropriate. First, the military judge's ruling is based on an erroneous view of the law—that there remains a judicial ability to apply a constitutional exception to MIL. R. EVID. 513 which no longer exists—that is very likely to recur by this military judge, as well as by other military judges. *See Labella*, 15 M.J. at 229. Second, it results from the military judge declining to protect the petitioner's psychotherapist-patient privilege, in direct contravention to the combined efforts of Congress and the President. These facts present extraordinary circumstances warranting relief.

Accordingly, the Petition for a Writ of *Mandamus* is granted. The military judge's ruling under MIL. R. EVID. 513 is set aside, and the petitioner's mental health records revert to their privileged status. The stay on the proceedings is lifted. The military judge may properly apply MIL. R. EVID. 513, consistent with this writ, and take remedial actions, as necessary, to ensure the RPI receives a trial wherein his constitutional rights are fully protected.

Senior Judge MARKS and Judge RUGH concur.

For the Court



R.H. TROIDL
Clerk of Court