# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
FLEMING, WILLIAMS, and COOPER
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Private E2 JEFFERY A. DEMAYO**
**United States Army, Appellant**

ARMY 20220594

Headquarters, Seventh Army Training Command
Thomas P. Hynes, Military Judge
Lieutenant Colonel Jeremy W. Steward, Staff Judge Advocate

For Appellant: Colonel Philip M. Staten, JA; Major Beau O. Watkins, JA; Captain Amber L. Bunch, JA (on brief); Lieutenant Colonel Autumn R. Porter, JA; Major Beau O. Watkins, JA; Captain Amber L. Bunch, JA (on reply brief).

For Appellee: Colonel Richard E. Gorini, JA; Major Justin L. Talley, JA; Mr. Shane Shuma (on brief).

12 September 2025

------------------------------------
MEMORANDUM OPINION
------------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent*

COOPER, Judge:

Appellant raises three assignments of error, two of which warrant discussion. Appellant alleges the military judge abused his discretion by prohibiting evidence pursuant to Military Rule of Evidence [Mil. R. Evid.] 513. We disagree. Appellant also alleges the presentation of the victim's unsworn statement during sentencing via a question-and-answer format with the trial counsel was improper. We agree but find the forfeited error did not result in material prejudice to a substantial right of appellant. Finally, pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A.

1982), appellant alleges unreasonable post-trial delay.[1] We agree but find no relief is appropriate under the circumstances of his case.

## BACKGROUND

A military judge, sitting as a general court-martial, convicted appellant, contrary to his pleas, of one specification of failure to obey a lawful regulation[2] and three specifications of sexual assault, in violation of Articles 92 and 120, Uniform Code of Military Justice, 10 U.S.C. §§ 892, 920 [UCMJ]. The military judge sentenced appellant to a dishonorable discharge, 32 months of confinement, and reduction to the grade of E-1.

In December 2018, appellant and the victim met in Ansbach, Germany, became close friends, and began having casual sex. The sexual portion of their relationship ended when appellant got a girlfriend in 2020.

The victim was hospitalized in the United States from December 2020 to February 2021. While hospitalized, the victim and appellant continued to communicate via Snapchat and Messenger.

In February, after the victim's release from the hospital, the victim was placed on restriction of movement and not allowed to have visitors. Appellant came to the victim's barracks room and refused to leave. While sitting on the victim's bed, appellant pulled his penis out of his pants. He then propositioned the victim, who stated, "I don't want to . . . no." Appellant then grabbed the back of the victim's head and guided it towards appellant's penis. The victim tried to pull away, and finally, froze. Appellant used his hand to get his penis into the victim's mouth and the victim "couldn't get out of it, so . . . gave up and just let it happen . . . ." Appellant guided the victim's head up and down on his penis until appellant ejaculated.

A couple of weeks later, appellant and the victim went to visit appellant's girlfriend at her house. On the drive back to the victim's barracks late in the evening, appellant pulled over at a truck stop and forced the victim to give him oral

---

[1] We have given full and fair consideration to the remaining matters personally raised by appellant pursuant to *Grostefon*, supra, including his supplemental matters, and find them to be without merit.

[2] Appellant was found guilty of violating Army Regulation 600-20 by sexually harassing Private First Class ███████. While giving her a ride to the clinic, appellant discussed his "libido," commented that "females couldn't keep up on his level," and clarified that he was talking about his "sex drive." ███████ ███████ testified she felt "uncomfortable" by these "unwelcomed comments."

sex. Although the victim resisted, like the first time, appellant grabbed the victim's head and guided it to appellant's exposed penis. The victim said "no," tried to pull away, froze, and finally just "let him do it . . . ."

Despite these two events, the victim did not report appellant and continued to spend time in the same group of friends as appellant. In April or May 2021, this same group of friends drank and played video games at appellant's girlfriend's house. After everyone else left, appellant offered to give the victim a ride home. On the ride, appellant pulled over at a truck stop and told the victim to get in the backseat. Like before, the victim initially resisted but eventually got in the backseat. Appellant pulled down the victim's pants over the victim's protest, pulled his own pants down, and penetrated the victim's vagina with his penis.

After confiding in a friend about these incidents, the victim eventually reported it to the Criminal Investigative Division and an investigation was initiated.

Pursuant to a defense discovery request, the government released over 1,300 pages of the victim's medical records that inadvertently included behavioral health records protected under Mil. R. Evid. 513. After learning, during trial, protected records had been disclosed, the government, defense counsel and the military judge had a Rule for Courts-Martial 802 conference. The government summarized the conference on the record and requested "that the information be returned as an inadvertent disclosure" in order to "return that [information] without making any further observation or copies . . . to send it back to the records department." The government further clarified, "it's our understanding the defense does still have a full copy of the medical records that were disclosed on that disk this morning." Nothing further was said about defense counsel's possession of privileged information and the trial proceeded with the victim retaking the stand.

Later in the trial, the government again referenced the possession of behavioral health records by the defense team and specifically requested the military judge issue a "protective order" for the victim's behavioral health records. The military judge then stated:

> There's been some evidence that there was an inadvertent disclosure of medical records that may include behavioral health records. So I'm issuing an order at this point that the government not – the defense not make any additional copies or share that information with anyone other than immediate members of the defense team, including your expert consultant, if necessary.

During the defense case-in-chief, defense counsel attempted to make their expert consultant an expert witness and began to discuss information from the victim's behavioral health records. At this point, the military judge closed the court

and conducted a Mil. R. Evid. 513 hearing. In that hearing, defense sought to admit three exhibits, which contained mental health information from the inadvertent disclosure. The Special Victims' Counsel asserted privilege on behalf of the victim. The military judge ultimately ruled one exhibit was not privileged and therefore admissible. Conversely, he found the remaining two exhibits were inadmissible because they were privileged patient-psychotherapist communications, the victim had elected to assert the privilege, and no exception under Mil. R. Evid. 513(d) was applicable.

## LAW AND DISCUSSION

### A. Mil. R. Evid. 513 Records

A military judge's decision to admit evidence is reviewed for an abuse of discretion. *United States v. Hyppolite*, 79 M.J. 161, 164 (C.A.A.F. 2019) (internal citation omitted). "An abuse of discretion occurs when a military judge's decision is based on clearly erroneous findings of fact or incorrect conclusions of law." *United States v. Hernandez*, 81 M.J. 432, 437 (C.A.A.F. 2021) (internal citation omitted). In a case involving privileged information under Mil. R. Evid. 513, "[i]n order for Appellant to prevail, we would have to hold that the military judge abused his discretion by failing to order disclosure of the mental health records and that this abuse of discretion materially prejudiced his substantial rights." *United States v. Chisum*, 77 M.J. 176, 179 (C.A.A.F. 2018) (citing UCMJ art. 59(a)).

Military Rule of Evidence 513 provides:

A patient has a privilege to refuse to disclose and to prevent any other person from disclosing a confidential communication made between the patient and a psychotherapist . . . if such communication was made for the purpose of facilitating diagnosis or treatment of the patient's mental or emotional condition.

Mil. R. Evid. 513(a). The rule also lays out specific enumerated exceptions to the privilege. Mil. R. Evid. 513(d). Prior to 2015, the list of exceptions included Mil. R. Evid. 513(d)(8), "when admission or disclosure of a communication is constitutionally required." However, the 2015 National Defense Authorization Act modified Mil. R. Evid. 513 by striking the constitutional exception. Pub. L. No. 113-291, § 537, 128 Stat. 3292, 3369 (2014); Executive Order No. 13,696, 80 Fed. Reg. 35,783, 35,819 (June 22, 2015) ("Mil. R. Evid. 513(d)(8) is deleted.").

In *United States v. Tinsley*, this court conducted a thorough analysis of the patient-psychotherapist privilege and the impact of striking the constitutional exception. 81 M.J. 836 (Army Ct. Crim. App. 2021), pet. denied, 82 M.J. 372 (C.A.A.F. 2022). Recognizing the deletion of the constitutional exception as both a

4

legislative and executive act, "'the President was likely at the apex of his authority in implementing' M.R.E. 513." *Id.* at 849 (quoting *DB v. Lippert*, ARMY MISC 20150769, 2016 CCA LEXIS 63, at *27 n.14 (Army Ct. Crim. App. 1 Feb. 2016) (mem. op.)). *Tinsley* concluded military courts do not have the authority to read the constitutional exception back into Mil. R. Evid. 513 "or otherwise conclude that the exception still survives notwithstanding its explicit deletion." *Id.*

In appellant's case, we must first deal with the military judge's initial action when faced with the inadvertent disclosure by the government of privileged victim mental health information. The record suggests he did nothing. Although the government asked for all privileged records to be returned, there was no order from the military judge directing defense to return the records. Later, when the government again brought up defense counsel's possession of the victim's behavioral health records, the military judge issued a "protective order" but allowed the defense team continued access to the privileged materials. Neither of these responses were appropriate. Upon notification of the inadvertent disclosure of the victim's behavioral health records, the military judge should have first ascertained whether the victim was willing to waive the patient-psychotherapist privilege for those records. *See* Mil. R. Evid. 513(a) ("A patient has a privilege to refuse to disclose . . . ."). If not, the military judge should have immediately collected the records, sealed them, and returned them to the records holder. Later, if defense requested admissibility of the privileged information, as happened here, the military judge would have been required to follow the procedures discussed in Mil. R. Evid. 513(e)(3). Defense counsel would have had to establish by a preponderance of the evidence that an exception applied before an *in camera* review could have occurred.

Although the correct procedures within Mil. R. Evid. 513 were not followed here, on the ultimate issue concerning defense's request to admit the privileged information, the military judge did not abuse his discretion. Defense counsel reviewed the behavioral health records of the victim after the inadvertent disclosure and found information they argued was constitutionally required to present a complete defense. The military judge conducted a closed Mil. R. Evid. 513 hearing where the victim invoked the privilege and defense argued Mil. R. Evid. 513(d)(8), the former "constitutionally required" exception was applicable. Relying on *Tinsley*, the military judge ruled no enumerated exception under Mil. R. Evid. 513(d) applied and denied defense's motion to admit specific behavioral health records. Pursuant to *Tinsley*, we find no abuse of discretion by the military judge.

We acknowledge a split of opinions between sister service courts regarding the impact of deleting the constitutional exception from Mil. R. Evid. 513(d). *E.g.*, *United States v. Beauge*, 82 M.J. 157, 167 n.10 (C.A.A.F. 2022); *B.M. v. United States*, 84 M.J. 314, 320 (C.A.A.F. 2024) ("[T]he ACCA and the NMCCA have disagreed about the effect of the deletion of the constitutional exception."); *see also* *J.M. v. Payton-O'Brien*, 76 M.J. 782 (N.M. Ct. Crim. App. 2017). The Navy and

Marine Corps Court of Criminal Appeals [NMCCA], while acknowledging any application of the deleted constitutional exception in Mil. R. Evid. 513 was improper given "the obvious intent of both Congress and the President," still found the privilege "must not infringe upon the basic constitutional requirements of due process and confrontation" because "constitutional rights prevail over statutory and evidentiary rules." *Payton-O'Brien*, 76 M.J. at 787-88. The NMCCA recognized that while a constitutional exception no longer existed to pierce the privilege, a military judge still must determine an appropriate remedy should the victim's failure to waive the privilege reach constitutional proportions. *Id.* at 790.

While conflict exists among the sister service courts, our superior court has not yet been presented with a case that brings this issue squarely before it. This is not that case. Here, we determine after our review, that the evidence defense sought to admit did not reach constitutional proportions sufficient to trump the victim privilege and require release to "guarantee a meaningful opportunity to present a complete defense." *Id.* at 783.

Appellant argues DE L for identification and DE M for identification would "impeach [the victim's] prior statements and undermine [the victim's] credibility," and the military judge's decision not to admit them "implicates appellant's constitutional right to effectively confront witnesses and present a complete defense."[3] We disagree.

First, neither of the records provide contradictory or prior inconsistent statements of the victim. In fact, DE M for identification provided a prior *consistent* statement, and cumulative evidence, as the victim had already admitted during cross-examination to the relevant information in that record. Privileged information which is "merely cumulative of other information available . . . ." should not be admitted. Mil. R. Evid. 513(e)(3)(C).

---

[3] Appellant also argues defense counsel's ability to elicit information from the victim regarding Mil. R. Evid. 513 was erroneously denied by the military judge when he precluded defense, at that time, from crossing the victim on several of her mental health diagnoses. However, a close look at the record demonstrates that during defense's cross-examination of the victim, the military judge sustained trial counsel's objections to *relevance*. His decision was not based on the protection of privileged Mil. R. Evid. 513 information. Rather, it was based on the defense's failure, at that point in the trial, to establish that the victim had a diagnosed condition that affected memory or credibility. Later in the trial, after defense admitted a record of the victim's diagnoses and through testimony of its expert witness, defense was able to make the connection between the victim's diagnoses and their impact on memory and perception.

Second, defense effectively challenged the victim's credibility without the privileged records. Defense counsel sought to admit these records so its expert witness, Dr. J., could testify about dissociative disorder and borderline personality disorder (BPD). The victim had been diagnosed with dissociative disorder but had not been diagnosed with BPD. Because there was no BPD diagnosis, defense argued it needed to admit the victim's behavioral health records so its expert could discuss the victim's symptoms of BPD and how that could impact credibility. However, during an open court *voir dire* of ██████, trial counsel specifically asked whether ██████ could reach the "same conclusion" concerning the victim's symptoms of BPD "based solely on the case file," without the privileged behavioral health records. ██████ responded in the affirmative. Therefore, the privileged records were not necessary for Dr. J to provide his opinion so the defense counsel could then use it to attack the victim's credibility.

Finally, significant evidence was presented to the factfinder concerning the victim's mental diagnoses. Pursuant to *United States v. Mellette*, 82 M.J. 374 (C.A.A.F. 2022), evidence of the victim's post-traumatic stress disorder, depression, anxiety, insomnia, and dissociative trance disorder diagnoses were admitted at trial. There was also evidence of the victim's traumatic brain injury and a brain aneurysm. Defense counsel effectively used ██████ to thoroughly explain how each diagnosis impacted perception and memory.[4]

The military judge did not abuse his discretion by applying *Tinsley* and finding no constitutional exception existed within M.R.E. 513 to admit the victim's privileged records. We recognize *Tinsley* as our guiding precedent. We also find appellant's argument that the evidence was constitutionally required pursuant to *Payton-O'Brien* unpersuasive because the denial to admit privileged behavioral health records of the victim did not infringe upon appellant's right to "'a meaningful opportunity to present a complete defense.'" *Payton-O'Brien*, 76 M.J. at 789 (quoting *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006)).

---

[4] ██████ testified symptoms of these diagnoses could "cause deficits in the brain's functional level. So, its ability to concentrate, its ability to focus on events with full awareness, and its ability to generate accurate and complete memories . . . ." ██████ also linked dissociative trance disorder symptoms with a specific instance experienced by the victim during the assault to demonstrate an actual impact on memory and perception. In addition, ██████ testified to a "heighten[ed] clinical suspicion [of a BPD diagnosis] based on various pieces of data" and then provided information on how BPD was closely associated with dissociative trance disorder and how BPD impacts memory.

## B. Victim's Unsworn Statement

We review a military judge's admission of an unsworn victim statement for an abuse of discretion. *United States v. Edwards*, 82 M.J. 239, 243 (C.A.A.F. 2022).

Unobjected to error regarding the contents or format of a victim's unsworn statement are reviewed for plain error. *E.g.*, *United States v. Cornelison*, 78 M.J. 739, 743-46 (Army Ct. Crim. App. 2019), pet. denied 79 M.J. 189 (C.A.A.F. 2019). A finding of plain error requires: 1) error, 2) the error be plain or obvious, and 3) the error materially prejudice appellant's substantial rights. *United States v. Jones*, 78 M.J. 37, 44 (C.A.A.F. 2018).

Here, after the government completed its presentencing case, the military judge asked if a crime victim was present who desired to be heard. The government responded in the affirmative; the victim took the witness stand, and the trial counsel proceeded to question the victim. While defense counsel objected (during their sentencing argument) to the *substance* of the victim's unsworn statement, defense counsel did not object to the question-and-answer format with which the victim unsworn statement was presented.[5] As we do not find any evidence of a knowing and voluntary waiver, we review appellant's forfeited issue for plain error.

The impermissible use of a question-and-answer format with trial counsel for a victim's unsworn statement has been addressed in a series of cases.[6] We recognize most of these opinions were published after appellant's trial, so the military judge, at the time of trial, did not have the benefit of precedent to rely on. However, now it is clear "[p]resentation of the victim's unsworn statement via a question-and-answer format with trial counsel violates the Rules for Courts-Martial because it contravenes the principle that an unsworn victim statement belongs solely to the victim or the victim's designee." *Harrington*, 83 M.J. 408, 418 (C.A.A.F. 2023) (citing *United States v. Edwards*, 82 M.J. 239, 241 (C.A.A.F. 2022)). For the same reasons espoused in those cases, we find plain error.

If an error occurs in the admission of evidence at sentencing, the test for prejudice is "'whether the error substantially influenced the adjudged sentence.'" *Edwards*, 82 M.J. at 246 (quoting *United States v. Barker*, 77 M.J. 377, 384

---

[5] "There is no evidence before the court, other than [the victim's] unsworn statement, that [appellant] knew about [the victim's] previous abuse or that he exploited it, as argued by the government today. The defense objects to this being considered by the court in your determination of a just sentence."

[6] *E.g.*, *Cornelison*, supra; *United States v. Love*, ARMY 20210396, 2023 CCA LEXIS 116 (Army Ct. Crim. App. 28 Feb. 2023) (sum. disp.); *United States v. Harrington*, 83 M.J. 408 (C.A.A.F. 2023).

(C.A.A.F. 2018)). When determining whether an error substantially influenced a sentence, this court considers the following four factors: "'(1) the strength of the Government's case; (2) the strength of the defense case; (3) the materiality of the evidence in question; and (4) the quality of the evidence in question.'" *Id.* at 247 (quoting *Barker*, 77 M.J. at 384).

Although we find error, we conclude it did not substantially influence appellant's sentence. First, the government's presentencing case was strong. Appellant sexually assaulted his friend on three separate occasions. In addition, while under investigation for those sexual assaults, appellant sexually harassed ███, who testified during presentencing on the impact appellant's actions had on her. The appellant's company commander also testified to how appellant's actions "absolutely" affected the performance and readiness of the unit. Further, the government admitted a prior conviction of appellant. In comparison, defense's presentencing case was weak. Besides appellant's unsworn statement, only two witnesses testified: a chief warrant officer who worked with appellant for eighteen months and described appellant as performing "extremely well" and a sergeant who spoke about appellant's generosity during a unit paintball excursion. Defense also submitted a "Good Soldier Book" containing a certificate of achievement, character letters, and family photos.

The manner in which the victim's impact statement was given did not materially affect appellant's sentence. Appellant argues "new information" came out during the victim's unsworn and as the military judge "never stated that he disregarded" the information, this "information could have impacted appellant's sentence . . . ."[7] We can presume the military judge knew the law and applied it correctly, with no evidence to the contrary. *United States v. Bridges*, 66 M.J. 246, 248 (C.A.A.F. 2008). In fact, in this case the military judge signaled his acknowledgment and understanding of how the sentencing rules applied when he stated on the record, he "had to stick to the Rules when making a sentence determination." Therefore, we can safely presume the military judge gave appropriate weight to the unproven facts alleged in the victim's unsworn statement.[8]

---

[7] As noted above, defense counsel "objected" during their sentencing argument to the victim's reference to appellant's knowledge of the victim's prior abuse, and to trial counsel's sentencing argument alleging appellant exploited that knowledge. However, defense did not object when the victim initially made the statement during unsworn nor during trial counsel's sentencing argument. So, there was no opportunity for the military judge to rule on the objection without interrupting the defense's sentencing argument.

[8] "Unsworn victim statements are not sentencing evidence, but vindication of the victim's statutory right to be reasonably heard." *Harrington*, 83 M.J. at 419 (citing *United States v. Tyler*, 81 M.J. 108, 112 (C.A.A.F. 2021); UCMJ art. 6b(a)(4)(B)).

Appellant's reliance on *Harrington* is misplaced. In *Harrington*, the Court of Appeals for the Armed Forces [CAAF] found it was "the cumulative effect" of the victim's unsworn statement via a question-and-answer format with trial counsel, "*combined with* the prejudice caused by the military judge's erroneous denial of the requested sentencing instruction . . . ." that led to its determination of prejudice. 83 M.J. at 423 (emphasis added). Here, we are confronted with a judge alone trial and the well-established presumption that a military judge knows and will follow the law. *Bridges*, 66 M.J. at 248. Accordingly, there are no cumulative errors to press the scale on prejudice. *Harrington*, 83 M.J. at 423.

Finally, appellant faced a maximum confinement sentence of ninety-two years based on his convictions for three sexual assault offenses and one violation of a lawful regulation. The government asked for ten and a half years of confinement and the military judge sentenced him to just thirty-two months. *See Barker*, 77 M.J. at 384. Given the analysis above and considering the adjudged sentence, we find the military judge's abuse of discretion did not have a substantial impact on appellant's sentence.

### C. Post-Trial Delay

We review allegations of unreasonable post-trial delay de novo. *United States v. Moreno*, 63 M.J. 129, 135 (C.A.A.F. 2006). Whether a post-trial processing timeline is reasonable or dilatory is determined on a case-by-case basis. *E.g.*, *United States v. Abdullah*, 85 M.J. 501, 2024 CCA LEXIS 479, at *27 (Army Ct. Crim. App. 5 Nov. 2024); *United States v. Toohey* (*Toohey I*), 60 M.J. 100, 101-02 (C.A.A.F. 2004); *Moreno*, 63 M.J. at 143.

The CAAF has recognized "two separate and independent avenues to provide relief for dilatory post-trial processing: (1) the Due Process Clause of the Fifth Amendment; and (2) the statutory basis under Article 66 when there is no showing of 'actual prejudice.'" *Abdullah*, 2024 CCA LEXIS 479, at *9 (quoting *United States v. Anderson*, 82 M.J. 82, 85 (C.A.A.F. 2022)). Whether there is a due process violation resulting from post-trial delay is analyzed using the four factors from *Barker v. Wingo*, 407 U.S. 514 (1972): "(1) length of the delay; (2) reasons for the delay; (3) the appellant's assertion of his right to a timely appeal; and (4) prejudice to the appellant." *Toohey I*, 60 M.J. at 102. When there is no finding of prejudice under the fourth *Barker* factor, a due process violation still occurs when "in balancing the three other factors, the delay is so egregious that tolerating it would adversely affect the public's perception of the fairness and integrity of the military justice system." *Anderson*, 82 M.J. at 87 (quoting *United States v. Toohey* (*Toohey II*), 63 M.J. 353, 362 (C.A.A.F. 2006)).

Where post-trial delay is not a due process violation, this court still has authority under Article 66(d)(2), UCMJ, to "provide appropriate relief if the accused

demonstrates error or excessive delay in the processing of the court-martial after the judgment was entered into the record . . . ." UCMJ art. 66(d)(2).

Here, the court-martial adjourned on 17 November 2022, the convening authority took action on 1 December 2022, the Entry of Judgment was signed 4 December 2022, and then post-trial processing seemingly came to a halt. The court-reporter certified the record over a year later, on 29 January 2024, and our court received the record on 12 March 2024. The length of the delay, 481 days on a 630-page transcript, is unreasonable. Additionally, the Office of the Staff Judge Advocate (OSJA) did not submit any explanation for this delay. In *United States v. Winfield*, this court made clear that it would "scrutinize even more closely the unit-level explanations . . ." of post-trial delay and that "[s]taff judge advocates who decline to memorialize delays with thorough, credible, and relevant specificity do so at the peril of their units' cases on appeal." 83 M.J. 662, 665-66 (Army Ct. Crim. App. 2023). Sitting en banc in *Abdullah*, this court re-emphasized its interest in the staff judge advocate's explanation for post-trial delay and "the importance of providing a detailed explanation and something more than a mere recitation of the timeline of post-trial events." 2024 CCA LEXIS 479, at *11-12.

We are troubled by the 481-day delay and the lack of any post-trial memorandum to account for this pause in post-trial processing – both initial *Barker* factors weigh for appellant. However, as appellant did not assert his right to a timely review and there is no prejudice alleged, we are left to determine whether this unexplained delay is "so egregious" that it tainted perception of the military justice system. Although the OSJA failed to heed the warnings in *Winfield* as it relates to unit-level explanations, in this case, we do not find the delay to be so egregious as to negatively impact the public's perception of the fairness and integrity of the military justice system.

In finding no due process violation, we next turn to our authority under Article 66(d)(2), UCMJ, which allows us to provide appropriate relief if the accused demonstrates excessive delay after the judgment was entered into the record. Upon a demonstration of excessive delay in the processing of the court-martial, this court may grant appropriate relief, "tailor[ed] . . . to the circumstances of the case." *United States v. Hotaling*, ARMY 20190360, 2020 CCA LEXIS 449, at *8-9 (Army Ct. Crim. App. 11 Dec. 2020) (mem. op.) (quoting *United States v. Jones*, 61 M.J. 80, 86 (C.A.A.F. 2005)). While we find the unexplained delay was excessive, after reviewing the entire record and considering the totality of the circumstances of this case, we determine no relief is appropriate.

## CONCLUSION

The findings of guilty and the sentence are AFFIRMED.

Senior Judge FLEMING and Judge WILLIAMS concur.

FOR THE COURT:

JAMES W. HERRING, JR.
Clerk of Court