IN THE UNITED STATES COAST GUARD
COURT OF CRIMINAL APPEALS

18 March 2019

In re C. P-B,
      Petitioner

United States,
      Real Party in Interest

Michael A. Badar,
Electrician's Mate First Class (E-6),
      Real Party in Interest

PETITION FOR EXTRAORDINARY
RELIEF IN THE NATURE OF A WRIT
OF MANDAMUS, FILED 28 JANUARY
2019

MISC. DOCKET NO. 001-19

<u>ORDER</u>

BEFORE MCCLELLAND, BRUBAKER &
MOORADIAN

BRUBAKER, Judge:

Petitioner, an alleged crime victim under Article 6b, Uniform Code of Military Justice, seeks extraordinary relief in the nature of a writ of *mandamus* requiring the military judge in the case of *United States v. EM1 Michael A. Badar* to exclude certain evidence under Military Rule of Evidence (M.R.E.) 412, Manual for Courts-Martial, United States (2016 ed.). We conclude that relief is not warranted.

*Background*

The accused, EM1 Badar, is pending a general-court martial for, among other charges, sexually assaulting Petitioner and, in a separate incident, assaulting Ms. H.R. Trial defense counsel raised a motion *in limine* seeking a ruling on the admissibility of evidence under M.R.E. 412 of Petitioner's alleged romantic and sexual relationship with Mr. S.T.

At a motions session, Mr. S.T. testified substantially as follows:

- Mr. S.T. met the accused and Petitioner, who were married and living together at the time, through a mutual social group. Mr. S.T. and Petitioner developed a close personal relationship that included working out together, eating lunch together, and frequent communication.
- Petitioner confided in Mr. S.T. that she was experiencing marital tensions with the accused and expressed fear of where she would live if the marriage ended. Mr. S.T. offered that she could use a spare bedroom in his home if it became necessary.
- Within their social group, rumors developed that Mr. S.T. and Petitioner had a sexual relationship. Although Mr. S.T. denied such rumors were true at that time, the

rumors caused tensions within the social group and further tensions within Petitioner's and the accused's marriage, including the accused alleging that Petitioner was emotionally cheating on him.

- In late November or early December 2015, Petitioner told Mr. S.T. that the accused had sexually assaulted her. Mr. S.T. encouraged her to report the alleged assault to the Coast Guard Investigative Service (CGIS), but Petitioner at that time declined.
- In late December 2015, Petitioner moved out of her marital home with the accused and moved in with Mr. S.T. and his wife.
- Around May or June 2016, Mr. S.T.'s and Petitioner's relationship became romantic, including sexual activity. This sexual relationship continued until she moved out of Mr. S.T.'s house in November 2016.
- In late April or early May 2017, another member of the social group, Ms. H.R., told Mr. S.T. that the accused had assaulted her. After getting Ms. H.R.'s permission, Mr. S.T. informed Petitioner of Ms. H.R.'s allegation, including that the accused was highly intoxicated and had his and Petitioner's young daughter with him at the time. In cross-examination, he agreed that he did this because it would be potentially helpful to Petitioner's ongoing custody battle with the accused and was still interested in helping her with that process.
- Mr. S.T. also viewed the accused as dangerous, violent, and a sexual predator. He shared that view with Petitioner.
- Mr. S.T. spoke to Petitioner and her divorce attorney about whether to raise the sexual assault allegation as part of the divorce proceedings.
- Mr. S.T. suggested to both Petitioner and Ms. H.R. that even if they did not report their allegations to CGIS, they could at least tell the accused's Coast Guard command.
- Petitioner used the information about Ms. H.R.'s alleged assault to obtain a modified court order pertaining to the accused's custody of their child. The court sent Mr. S.T. a copy of this order, who in turn provided it to Ms. H.R.

After Ms. H.R. reported her allegation of assault to CGIS, CGIS contacted Petitioner, who ultimately cooperated and disclosed the details of her allegation of sexual assault.

*Motion to File Petition Out of Time*

As a preliminary matter, the accused contends that the petition should be dismissed because it was not timely filed under the new Joint Rules of Appellate Procedure (JRAP). We previously granted Petitioner's motion for leave to file the petition out of time. The accused's appellate counsel, however, informs us that she was not served with a copy of that motion. Although we note that Petitioner did serve a copy on the accused's trial defense counsel and no appellate defense counsel had yet made an appearance, we acknowledge that the better future practice would be to serve a copy of such pleadings on the appellate defense office. We thus consider the accused's objections to determine whether we improvidently granted the motion, but conclude that we did not.

2

The accused makes several salient points. The current JRAP apply to any case docketed with the Court on or after 1 January 2019. JRAP 4. This case was docketed on or after 1 January 2019, so the procedural rules of the current JRAP apply—irrespective of when the action complained of in the petition occurred. These rules require a petition for extraordinary relief to be filed no later than twenty days after the petitioner learns of the action complained of. JRAP 19(b)(1). Petitioner did not file her motion for leave to file a petition out of time until 23 January 2019.

We nevertheless continue to find good cause to grant Petitioner's motion. We see no indication that Petitioner acted with anything less than good faith and she filed her motion the same day the record of proceedings was authenticated. We recognize that, under the circumstances, there may have been some uncertainty about the meaning and effect of the new rules. The belated filing also had little, if any, practical impact. We would have required the record of the proceedings before taking our initial action anyway and the government furlough, which continued until 26 January 2019, also would have impacted the Court's ability to substantively address the writ. Considering all the circumstances of this case, we conclude that granting the motion was not improvident and turn to the merits of the petition.

*Analysis*

Article 6b, UCMJ, empowers this court to issue writs of *mandamus* when needed to enforce certain protections afforded to alleged victims. Article 6b(e), UCMJ; *H.V. v. Kitchen*, 75 M.J. 717, 718 (C.G. Ct. Crim. App. 2016); *J.M. v. Payton-O'Brien*, 76 M.J. 782, 785 (N-M. Ct. Crim. App. 2017). This includes the protections of M.R.E. 412. Article 6b(e)(4)(c), UCMJ. Article 6b, however, does not alter the nature of a writ of *mandamus* or its exacting standards. It remains "a drastic instrument which should be invoked only in truly extraordinary situations." *United States v. Labella*, 15 M.J. 228, 229 (C.M.A. 1983) (citations omitted); *J.M.*, 76 M.J. at 785. The writ has traditionally been used "to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so." *Roche v. Evaporated Milk Association*, 319 U.S. 21, 26 (1943) (citations omitted). Only exceptional circumstances amounting to a "clear abuse of discretion or usurpation of judicial power" justify the invocation of the writ. *Bankers Life & Casualty Co. v. Holland*, 346 U.S. 379, 383 (1953) (citation and internal quotation marks omitted).

To prevail, a petitioner seeking an extraordinary writ must show that: "(1) there is no other adequate means to attain relief; (2) the right to issuance of the writ is clear and indisputable; and (3) the issuance of the writ is appropriate under the circumstances." *Hasan v. Gross*, 71 M.J. 416, 418 (C.A.A.F. 2012) (citing *Cheney v. United States Dist. Court for D.C.*, 542 U.S. 367, 380–81 (2004)); *H.V.*, 75 at 718; *J.M.*, 76 M.J. at 785.

Here, Petitioner seeks a writ overturning the military judge's ruling that evidence of her romantic and sexual relationship with Mr. S.T. is admissible. M.R.E. 412 generally prohibits this kind of evidence of "other sexual behavior." M.R.E. 412(a)(1). But it provides an exception for "evidence the exclusion of which would violate the accused's constitutional rights." M.R.E. 412(b)(3). An accused seeking admission of evidence under this exception bears the burden of showing that the evidence is "relevant, material, and favorable to his defense," and thus

3

necessary.  *United States v. Smith*, 68 M.J. 445, 448 (C.A.A.F. 2010).  "The term 'favorable' as used in both Supreme Court and military precedent is synonymous with 'vital.'"  *Id.* (internal quotation marks and citations omitted).

Evidence is relevant if it has "any tendency to make the existence of a fact more or less probable than it would be without the evidence."  M.R.E. 401(a).  Evidence is material if it is "of consequence to the determination of the accused's guilt."  *Smith*, 68 M.J. at 448 (internal quotation marks and citations omitted).  Assessing materiality involves looking at "the importance of the issue for which the evidence was offered in relation to the other issues in this case; the extent to which this issue is in dispute; and the nature of other evidence in the case pertaining to this issue."  *Id.* (internal quotation marks and citations omitted).

The military judge concluded that the accused had met his burden of showing that evidence of Petitioner's romantic and sexual relationship with Mr. S.T. is constitutionally required.  Reviewing that ruling under the stringent standards applicable to petitions for extraordinary relief, we conclude that Petitioner has not established that she has a clear and indisputable right to have it overturned.

First, reviewing questions of law *de novo*,[1] we see no indication that the military judge misinterpreted the law or applied an improper legal framework to assess the admissibility of the evidence.  He correctly recited the law and analyzed the evidence within this framework.

Petitioner avers that the ruling evinces a misapplication of the law because it does not expressly conclude that the evidence is favorable to the accused.  We disagree.  In *United States v. Ellerbrock*, 70 M.J. 314 (C.A.A.F. 2011), the United States Court of Appeals for the Armed Forces framed the test for admissibility under the constitutionally-required exception this way: "Generally, evidence must be admitted within the ambit of M.R.E. 412(b)(1)(C) when the evidence is relevant, material, and the probative value of the evidence outweighs the dangers of unfair prejudice."  *Ellerbrock*, 70 M.J. at 318 (citing *United States v. Gaddis,* 70 M.J. 248, 255 (C.A.A.F. 2011)).  Notably, this test does not include a "favorable" prong; in fact, the majority does not even use the words "favorable" or "vital."  But Chief Judge Baker, although dissenting in the result, provides a powerful explanation for this: "M.R.E. 412(c)(3) evidence may be sufficiently relevant and material—its probative value sufficiently high—that it may be essential to an accused's constitutional right to put on a defense regardless of how it balances against the victim's privacy. . . .  Such evidence in the vernacular of case law is termed 'favorable,' or 'vital' to the accused, and is constitutionally required because the accused has a right to a fair trial and an opportunity to put on a defense."  *Id.* at 323 (Baker, J., dissenting).  We agree: evidence being "favorable" is simply another way of expressing that it is sufficiently relevant, material, and probative when weighed against dangers of unfair prejudice that it is essential to an accused's constitutional right to a fair trial.

---

[1] *LRM v. Kastenberg*, 72 M.J. 364, 369 (C.A.A.F. 2013), *superseded on other grounds by statute*, Article 6b(e), UCMJ, *as recognized in Randolph v. HV*, 76 M.J. 27, 29 (C.A.A.F. 2017).
.

4

While the military judge did not explicitly conclude that the evidence is "favorable," he marched through M.R.E. 412 and *Ellerbrock*'s requirements—relevant, material, probative value outweighs dangers of unfair prejudice—"in deliberate and sequential fashion," *id.*, and concluded that it is *necessary* for the Defense. Using the word "necessary" instead of "vital" or "favorable" does not constitute a clear abuse of discretion.

We next review the military judge's findings of fact and conclusions of law. We give these wide berth, only overturning them if, beyond mere disagreement, we conclude they are "arbitrary, fanciful, clearly unreasonable, or clearly erroneous." *United States v. Collier*, 67 M.J. 347, 353 (C.A.A.F. 2009) (internal quotation marks and citations omitted). Petitioner does not dispute any findings of fact, taking aim instead at the military judge's legal analysis and conclusions.

We concede that the facts in this case present a close call as to the constitutional necessity of admitting evidence that Petitioner had a romantic and sexual relationship with Mr. S.T. months after the alleged assault and months before Petitioner reported her allegation to law enforcement. But nor can we say that the military judge clearly and indisputably abused his discretion. Mr. S.T., at least arguably, played a central role in encouraging both alleged victims to report their allegations to government officials and he was a conduit of information between the victims. The military judge's conclusion that the accused is entitled to explore Mr. S.T.'s motivation in doing so and potential bias is, therefore, not fanciful. It is also not fanciful for the military judge to conclude that the accused is entitled to explore the influence that Mr. S.T. may have had on Petitioner—including the existence of a romantic and sexual relationship—and how this may have impacted her motivation or bias in reporting her allegation to government officials.

Finally, we find no clear abuse of discretion in the military judge's conclusion that the probative value of the evidence outweighed the danger of unfair prejudice. The existence and duration of the relationship are uncontroverted, so a "trial within a trial" is unlikely. Further, the military judge imposed limits on the scope of the evidence that would be presented. As the accused's counsel notes, the military judge "exercised appropriate judicial discretion in limiting the defense's probing of the witnesses' sexual relationship." (Accused's Answer at 17.) Such limits further reduce the risks of unfair prejudice at trial and support the conclusion that the military judge did not clearly abuse his discretion.

In sum, we conclude that Petitioner fails to demonstrate that she is clearly and indisputably entitled to a writ of *mandamus*.

Accordingly, it is, by the Court, this 18th day of March, 2019,

ORDERED:

That Petitioner's motion for oral argument is denied.

That the petition for extraordinary relief is denied.

5

That the stay of proceedings ordered on 4 February 2019 is vacated.



For the Court,

Sarah P. Valdes
Clerk of the Court

Copy:  Office of Military Justice
   Special Victims' Counsel
   Appellate Government Counsel
   Appellate Defense Counsel