*This opinion is subject to revision before publication.*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

_____

**In re B.M.**
Appellant

**v.**

**UNITED STATES**
Appellee

and

**Dominic R. BAILEY, Lieutenant Commander**
United States Navy, Real Party in Interest

**No. 23-0233**
Crim. App. No. 202300050

Argued December 5, 2023—Decided April 3, 2024

Military Judge: Kimberly J. Kelly

For Appellant: *Captain April P. McCroskey*, USA (argued); *Lieutenant Colonel Elizabeth A. Murphy*, USA, and *Major Rocco J. Carbone III*, USAF (on brief).

For Appellee: *Lieutenant Colonel James A. Burkart*, USMC (argued); *Colonel Joseph M. Jennings*, USMC, *Major Candace G. White*, USMC, and *Brian K. Keller*, Esq. (on brief).

For Real Party in Interest: *Captain Colin W. Hotard*, USMC (argued).

Amici Curiae for Appellant: *Colonel Iain Pedden*, USMC, and *Major Brian L. Farrell*, USMCR (on behalf of the United States Marine Corps Victims' Legal Counsel Organization) (on brief); and *Captain Daniel Cimmino*, JAGC, USN, and *Lieutenant Commander Kimberly Rios*, JAGC, USN (on behalf of the United States Navy Victims' Legal Counsel Program) (on brief).

Amici Curiae for Appellant: *Peter Coote*, Esq. (on behalf of the Pink Berets and Not in My Marine Corps) (on brief).

Judge MAGGS delivered the opinion of the Court, in which Chief Judge OHLSON, Judge SPARKS, Judge HARDY, and Judge JOHNSON joined. Chief Judge OHLSON filed a separate concurring opinion. Judge SPARKS filed a separate concurring opinion, in which Judge JOHNSON joined.

_____

Judge MAGGS delivered the opinion of the Court.

The Judge Advocate General of the Navy certified the following two questions arising from the decision of the United States Navy-Marine Corps Court of Criminal Appeals (NMCCA) in *In re B.M.*, 83 M.J. 704 (N-M. Ct. Crim. App. 2023):

> I. M.R.E. 513 governs the procedures for production and in camera review of patient records that "pertain to" communications to a psychotherapist. The military judge applied R.C.M. 703 to order production and conduct an in camera review of Major B.M.'s diagnosis and treatment. Did the military judge err by applying the narrow scope of the M.R.E. 513(a) privilege defined in [*United States v.*] *Mellette*[, 82 M.J. 374 (C.A.A.F. 2022),] to bypass the procedural requirements of M.R.E. 513(e)?

> II. The Army [Court of Criminal Appeals] held no constitutional exception to M.R.E. 513 exists. The Navy-Marine Corps Court of Criminal Appeals ruled the Constitution required production of mental health records. The resulting disparity in appellate precedent precludes uniform application of the law. Should [*J.M. v.*] *Payton-O'Brien*[, 76 M.J. 782 (N-M. Ct. Crim. App. 2017),] be overturned?

*B.M. v. United States*, 83 M.J. 463, 463 (C.A.A.F. 2023). For reasons that we will explain, we cannot fully answer either of these questions because of the unusual procedural posture of this case. We conclude, however, that the decision of the NMCCA should be affirmed.

## I. Background

A convening authority referred charges against Lieutenant Commander Dominic R. Bailey (the accused) to a general court-martial. These charges included two specifications alleging that the accused did acts constituting abusive sexual contact and three specifications alleging that he did acts constituting assault consummated by a battery in violation, respectively, of Articles 120 and 128, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 920, 928

(2018). All the specifications alleged that the victim of these offenses was Major B.M. (the named victim).

At the accused's request, the military judge ordered a military health facility to produce nonprivileged portions of the named victim's mental health records that were limited to her diagnoses and treatments. In issuing this order, the military judge relied on the general procedure for ordering the production of evidence in Rule for Courts-Martial (R.C.M.) 703 instead of the special procedure for determining the admissibility of patient records or communications in Military Rule of Evidence (M.R.E.) 513(e). The military judge explained that "diagnoses, prescriptions, and treatment are not covered by [the psychotherapist-patient privilege in] M.R.E. 513 and if that is the case then the applicable rule is R.C.M. 703 for the production of these records."

The military health facility attempted to comply with the military judge's order by producing certain records. In reviewing these records in camera, the military judge learned that, contrary to her order, the documents were not limited to diagnoses and treatments but also contained some communications protected by the psychotherapist-patient privilege established by M.R.E. 513(a). The military judge further determined that, if the accused were tried by court-martial, disclosure of certain portions of these records would be "constitutionally required" in order "to guarantee the accused a meaningful opportunity to present a complete defense." The military judge asked the named victim if she would waive her privilege with respect to the documents that contained exculpatory information so that the accused could see the documents. The named victim declined to waive her privilege. In response, the military judge abated the court-martial proceeding and ordered the records sealed.

The named victim then petitioned the NMCCA for extraordinary relief in the nature of a writ of mandamus and a stay of proceedings. *In re B.M.*, 83 M.J. at 706. She asked the NMCCA to order the military judge to (1) seal or destroy her mental health records; (2) lift the abatement

order; and (3) disqualify herself so that another military judge could preside over the court-martial. *Id.* The Government did not file an appeal seeking to overturn the abatement order. *Id.* at 708 n.17.

The NMCCA determined that it could not provide the named victim with any relief. It denied the named victim's request for an order directing the military judge to seal or destroy the mental health records, explaining: "[B]ecause the records are now sealed in accordance with the military judge's order, we find no further remedy is necessary." *Id.* at 711. The NMCCA also refused to lift the abatement order, explaining:

> [T]he military judge did not abuse her discretion when she abated the trial in light of information learned while reviewing the records over which Petitioner asserted a privilege. Her inadvertent review of privileged material did not, in any respect, waive Petitioner's privilege, but it did alert the military judge to the fact that the records contained evidence of both confabulation and inconsistent statements made by Petitioner which would be constitutionally required to be produced because the records were exculpatory . . . . [W]e find that the military judge's decision was within the range of choices reasonably arising from the applicable facts and the law.

*Id.* at 717 (footnote omitted). The NMCCA further denied the named victim's request for an order disqualifying the military judge, explaining that "this matter is not ripe for consideration because the case is abated." *Id.*

The named victim filed a petition for review in this Court, but this Court dismissed the petition for lack of jurisdiction. *B.M. v. United States*, 83 M.J. 465 (C.A.A.F. 2023). Following this Court's dismissal of the named victim's petition, the Judge Advocate General of the Navy certified for review the two questions quoted above.

## II. Jurisdiction

Although this Court did not have jurisdiction to consider the named victim's petition for review, *see M.W. v.*

*United States*, 83 M.J. 361, 362, 364-65 (C.A.A.F 2023) (holding that this Court lacks jurisdiction to review a petition filed by a victim of an offense), this Court does have jurisdiction to review questions certified by a Judge Advocate General, pursuant to Article 67(a)(2), UCMJ, 10 U.S.C. § 867(a)(2) (2018). This Court, however, does not issue advisory opinions even if it has jurisdiction. *United States v. Chisholm*, 59 M.J. 151, 152 (C.A.A.F. 2003) (explaining that this Court "generally adhere[s] to the prohibition on advisory opinions as a prudential matter"). An advisory opinion is a ruling on a legal question "which cannot affect the rights of the litigants in the case before [the court]." *St. Pierre v. United States*, 319 U.S. 41, 42 (1943) (per curiam); *see also Chisholm*, 59 M.J. at 152 ("An advisory opinion is an opinion issued by a court on a matter that does not involve a justiciable case or controversy between adverse parties."). Similarly, this Court does not answer questions that are not ripe for decision or that have become moot. *United States v. Wall*, 79 M.J. 456, 459 (C.A.A.F. 2020) (explaining that this Court generally adheres to the principle that issues not ripe for appeal cannot be decided); *United States v. McIvor*, 21 C.M.A. 156, 158, 44 C.M.R. 210, 212 (1972) (declining to decide a moot certified question). Finally, as a prudential matter, this Court follows the principles of standing that apply to Article III courts. *United States v. Wuterich*, 67 M.J. 63, 69 (C.A.A.F. 2008). In accordance with these principles, this Court only addresses claims raised by parties who can show "an injury in fact, causation, and redressability." *Id.* (citing *Sprint Commc'ns Co. v. APCC Servs., Inc.*, 554 U.S. 269, 273 (2008)).

### III. Discussion

#### A. Certified Question I

The first certified question asks in relevant part whether "the military judge err[ed] by applying the narrow scope of the M.R.E. 513(a) privilege defined in [*United States v.*] *Mellette*[, 82 M.J. 374 (C.A.A.F. 2022),] to bypass the procedural requirements of M.R.E. 513(e)."

Four preliminary points of explanation may help to clarify the meaning of this question. First, the referenced M.R.E. 513(a) creates a privilege allowing a patient "to refuse to disclose . . . a confidential communication made between the patient and a psychotherapist . . . if such communication was made for the purpose of facilitating diagnosis or treatment of the patient's mental or emotional condition." Second, this Court held in the referenced *Mellette* decision that while the privilege in M.R.E. 513(a) protects certain communications between a patient and a psychotherapist, "diagnoses and treatments contained within medical records are not themselves uniformly privileged under M.R.E. 513." 82 M.J. at 375. Third, the referenced M.R.E. 513(e) establishes a "*Procedure to Determine Admissibility of Patient Records or Communication*" that are or may be protected by the privilege established in M.R.E. 513(a). Fourth, as described above, the military judge in this case decided not to follow the special procedures set forth in M.R.E. 513(e), but instead followed the general procedures for ordering the production of evidence in R.C.M. 703.

The procedural posture in which we confront this certified question is unusual and perhaps unprecedented. Although the Judge Advocate General certified the question, the Government asks this Court to answer the question in the negative and to affirm the NMCCA's decision. The Government does not seek any relief from this Court based on this certified question. The named victim has submitted briefs "in support of the U.S. Navy Judge Advocate General's Certificate for Review," but her position differs from that of the Government. The named victim argues that this Court should answer the first certified question in the affirmative, and she further requests three specific remedies. First, the named victim asks this Court to reverse the NMCCA and to lift the military judge's abatement order. Second, the named victim asks this Court to disqualify the military judge from further proceedings in this case based on her erroneous actions and exposure to privileged material. Third, the

named victim asks that "her mental health records [be] returned to a privileged and protected status." We consider the victim's arguments for each of these remedies in turn.

### 1. Lifting the Abatement Order

In support of her request that this Court lift the abatement order, the named victim contends that the military judge should not have looked at her medical records without following the procedures in M.R.E. 513(e). She asserts that any potentially exculpatory evidence that the military judge may have seen therefore came from "improperly divulged" privileged communications. (Internal quotation marks omitted.) (Citation omitted.) Finally, she argues that the military judge had no authority under either M.R.E. 513 or R.C.M. 703 to abate the court-martial proceedings based on such privileged communications.

Before addressing the merits of these arguments, we must consider a preliminary issue: whether the named victim initially had standing to challenge the abatement order by filing an extraordinary writ in the NMCCA. On this point, we observe that Article 6b(e)(1), UCMJ, 10 U.S.C. § 806b(e)(1), authorizes the victim of an offense to seek a writ of mandamus from a CCA only in specified circumstances. The provision states:

> If the victim of an offense . . . believes . . . *a court-martial ruling violates the rights of the victim afforded by a section (article) or rule specified in paragraph (4)*, the victim may petition the Court of Criminal Appeals for a writ of mandamus to require . . . the court-martial to comply with the section (article) or rule.

Article 6b(e)(1), UCMJ (emphasis added).[1] The referenced "paragraph (4)" includes protections afforded by Article 6b(a), UCMJ, and by "M.R.E. 513, relating to the psychotherapist-patient privilege." *Id.* § 806(e)(4)(A), (D).

---

[1] Article 6b, as amended in 2021, applies to this appeal. This version is codified at 10 U.S.C. § 806b (2018 & Supp. III 2019-2022).

We first consider whether the "court-martial ruling violates the rights of the victim afforded by" M.R.E. 513. The named victim argues that the military judge violated M.R.E. 513 by not following the procedures in M.R.E. 513(e), when she was required to do so, before examining her records. But the named victim does not argue, nor could she argue, that the abatement order—which she is asking this Court to lift—itself violated either the privilege afforded by M.R.E. 513(a) or the procedures in M.R.E. 513(e). The abatement order served only to stop the court-martial proceedings; it did not vitiate her privilege or require her to waive the privilege. The abatement order is thus not "a court-martial ruling [that] violates the rights of the victim afforded by" M.R.E. 513.[2]

We next consider whether the "court-martial ruling violates the rights of the victim afforded by" Article 6b(a), UCMJ. This article grants victims certain rights, including a "right to proceedings free from unreasonable delay" and a "right to be treated with fairness and with respect for the dignity and privacy of the victim of an offense." Article 6b(a)(7), (9), UCMJ. We hold that these rights, while important, do not provide the named victim with standing to challenge the military judge's abatement order.

In reaching this holding, we draw guidance from the United States Supreme Court's decision in *Linda R.S. v. Richard D.*, 410 U.S. 614 (1973). In that case, a state prosecutor declined to prosecute a father for not paying child support for his illegitimate child. *Id.* at 615-16. The mother of the child sued the prosecutor, requesting from the Court a declaration that the practice of not bringing criminal charges against the fathers of illegitimate children was unlawfully discriminatory. *Id.* at 616. The Supreme Court

---

[2] The Government argues that the abatement order "force[d] the Victim to choose between waiving her privilege or facing abatement of charges." But that does not make the abatement order "a court-martial ruling [that] violates the rights of the victim afforded by" M.R.E. 513.

held that the mother lacked standing to bring the lawsuit. *Id.* at 619. The Supreme Court explained:

> [I]n American jurisprudence at least, a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another. Appellant does have an interest in the support of her child. But given the special status of criminal prosecutions in our system, we hold that appellant has made an insufficient showing of a direct nexus between the vindication of her interest and the enforcement of the State's criminal laws.

*Id.*

Although the *Linda R.S.* case arose in a different context, and specifically concerned the standing of a plaintiff to bring a civil lawsuit against a prosecutor, we find that the general principles described by the Supreme Court preclude us from lifting this abatement order at the named victim's request. Under Article 6b(a), UCMJ, the victim of an alleged offense has a right to be treated with fairness and respect and a right to proceedings free from unreasonable delay. But we are not convinced that these rights give the victim "a judicially cognizable interest" in the ultimate question of whether the government will or will not prosecute the accused. Because the abatement order is not "a court-martial ruling [that] violates the rights of the victim afforded by" Article 6b(a), UCMJ, the named victim therefore lacked standing to challenge the abatement order before the NMCCA, and she lacks standing before this Court.

Our decision does not mean that abatement orders are unreviewable. On the contrary, this Court has recognized that Article 62(a), UCMJ, 10 U.S.C § 862(a) (2018), authorizes the *government* to take an interlocutory appeal asking for the lifting of an abatement order. In *United States v. True*, the Court reasoned that an "abatement order . . . is the functional equivalent of a 'ruling of the military judge which terminates the proceedings' under Article 62(a), [UCMJ,]" and held that such a "ruling is a proper subject for appeal by the Government under this statute." 28 M.J. 1, 2 (C.M.A. 1989) (quoting Article 62(a), UCMJ). But in

this case, although the Government now says that it supports the named victim's arguments for lifting the abatement order, the Government did not file an Article 62, UCMJ, appeal asking the NMCCA to lift the abatement order. *In re B.M.*, 83 M.J. at 708 n.17. Based on the language of Article 6b, UCMJ, and the principle established by the Supreme Court in *Linda R.S.*, the named victim cannot assume the role of the Government and lacks standing.

### 2. Disqualification of the Military Judge

The named victim's second requested relief is disqualification of the military judge. Given our decision not to lift the abatement order, we agree with the NMCCA's determination that this request is not ripe for decision. *In re B.M.*, 83 M.J. at 718. This conclusion does not preclude the named victim from challenging the military judge if the abatement order is lifted in the future, but we express no view on the issue of disqualification in this opinion.

### 3. Returning Records to a Privileged and Protected Status

Finally, we cannot grant the named victim's request to have her medical records returned to a privileged and protected status because, in our view, this remedy is moot. Any communications in the records that were privileged remain privileged. The named victim did not waive the privilege because she did not "voluntarily disclose[] or consent[] to disclosure of any significant part of" the privileged communications. M.R.E. 510(a). On the contrary, the named victim expressly declined to waive her privilege. Like the NMCCA, we therefore see no basis for concluding that the military judge's in camera viewing of privileged communications—even if done erroneously—diminished the victim's right to assert her psychotherapist-patient privilege. *In re B.M.*, 83 M.J. at 717 & n.67. The military records are also already protected from disclosure because the military judge ordered them sealed and neither this Court nor the NMCCA has ordered them unsealed.

B. Certified Question II

The second certified question concerns a disagreement between the United States Army Court of Criminal Appeals (ACCA) and the NMCCA about whether there is a constitutional exception to the psychotherapist-patient privilege in M.R.E. 513. The question asks whether the NMCCA's decision in *J.M. v. Payton-O'Brien,* 76 M.J. 782 (N-M. Ct. Crim. App. 2017), should be overturned. Both the Government and the named victim ask us to answer this certified question in the affirmative.

Four preliminary points of background may also help clarify this question. First, the original version of M.R.E. 513, as promulgated in 1999, contained a constitutional exception that stated: "There is no privilege under this rule . . . when admission or disclosure of a communication is constitutionally required." M.R.E. 513(d)(8) (2000 ed.).[3] Second, the President deleted this constitutional exception in 2015.[4] Third, the ACCA and the NMCCA have disagreed about the effect of the deletion of the constitutional exception. In *United States v. Tinsley*, the ACCA held that "the military courts do not have the authority to either 'read back' the constitutional exception into M.R.E. 513, or otherwise conclude that the exception still survives

---

[3] The President created M.R.E. 513 in the 1999 Amendments to the Manual for Courts-Martial, United States, Exec. Order No. 13,140, § 2(a), 64 Fed. Reg. 55,115, 55,116-17 (Oct. 12, 1999). This was first included in the *Manual for Courts-Martial, United States* (2000 ed.) (*MCM*).

[4] In 2014, Congress directed that M.R.E. 513 be amended "[t]o strike the current exception to the privilege contained in subparagraph (d)(8) of Rule 513," i.e., the constitutionally required exception. *See* Carl Levin and Howard P. "Buck" McKeon National Defense Authorization Act for Fiscal Year 2015, Pub. L. 113-291, § 537(2), 128 Stat. 3292, 3369 (Dec. 19, 2014). The President then amended M.R.E. 513 in the 2015 Amendments to the Manual for Courts-Martial, United States, Exec. Order No. 13,696, Annex § 2(e), 80 Fed. Reg. 35,783, 35,819 (June 22, 2015). This amended version of M.R.E. 513 first appeared in the *MCM* (2016 ed.).

notwithstanding its explicit deletion." 81 M.J. 836, 849 (A. Ct. Crim. App. 2021). But in *Payton-O'Brien*, the NMCCA reached a different conclusion. 76 M.J. at 788. The NMCCA held that the "removal of the constitutional exception is inconsequential insofar as its removal purports to extinguish due process and confrontation rights." *Id.* The NMCCA then provided a non-exhaustive list of several situations in which it asserted that the psychotherapist-patient privilege must yield to the constitutional rights of the accused. *Id.* at 789. Certified Question II asks us to resolve this dispute between the ACCA and the NMCCA.

We recognize the general importance to the military justice system of resolving such conflicts among the Courts of Criminal Appeals. *See* C.A.A.F. R. 21(b)(5)(B)(iii). In this case, however, any decision that we would render on Certified Question II would be an advisory opinion because it would be a ruling on a legal question "which cannot affect the rights of the litigants in the case before [the court]." *St. Pierre*, 319 U.S. at 42. Regardless of whether we answered the question in the affirmative or in the negative, we could not provide any relief requested by the named victim (i.e., lifting the abatement order, disqualifying the military judge, and protecting the medical records). In our discussion of Certified Question I, we have already concluded on the basis of principles of standing, ripeness, and mootness, that we cannot grant this requested relief. Our decision did not turn on whether a constitutional exception to the privilege in M.R.E. 513(a) still exists. Because this Court does not issue advisory opinions, we therefore cannot answer Certified Question II in this case.

### IV. Conclusion

For these reasons, the decision of the United States Navy-Marine Corps Court of Criminal Appeals is affirmed.

Chief Judge OHLSON, concurring.

I join the Court's opinion in full. As Judge Maggs clearly explains, the principles of standing, ripeness, and mootness constrain this Court from answering the certified issues. But despite the "unusual and perhaps unprecedented" procedural posture of the instant case, the substantive issues raised therein will most assuredly arise in future courts-martial. *B.M. v. United States*, __ M.J. __, __ (7) (C.A.A.F. 2024). Therefore, I write separately to express my thoughts on how military judges, going forward, might address the challenges that arise when a victim's mental health records are at issue.

## I. Additional Facts

The Court's opinion nicely identifies the basic facts of the case so I will not repeat them here. I will simply add a few key details that are helpful for the purposes of this discussion.

First, in the military judge's order to the mental health provider, she directed the facility to produce documents "ONLY to the extent those records reflect" diagnoses, mental health prescriptions, and mental health treatments of Major B.M. (the named victim). She further instructed:

> The appropriate records custodian shall NOT provide any portion of a written mental or behavioral health record that memorializes or transcribes *actual communications* made between the patient and the psychotherapist or assistant to the psychotherapist. *The custodian of the records shall produce only records containing no actual communications and indicating a diagnosis, medication, and/or treatment, the date of diagnosis, prescription, and/or treatment, and the date the diagnosis was resolved, if applicable.*

(Footnote omitted.) The order also stated that the military judge would conduct an in camera review of the records to determine if disclosure was required.

Second, after receipt of the named victim's records, the military judge noted in an email to the named victim and the parties that the clinic included material "encompassed by" Military Rule of Evidence (M.R.E.) 513, and she asked the named victim if she continued to assert her M.R.E. 513

privilege over this material. The named victim, through counsel, stated that she was "continuing to invoke her privilege under M.R.E. 513 and [was] not waiving that right."

Third, the military judge subsequently issued an ex parte order to the named victim regarding her mental health records. In the order the military judge stated: "Notwithstanding the court's attempt to limit its review to sections addressing diagnoses, medications, and treatment, the court read items that appear to constitute 'actual communications' within the meaning of *United States v. Mellette*," 82 M.J. 374 (C.A.A.F. 2022).

Fourth and finally, the military judge concluded that some of the privileged records were constitutionally required to be disclosed to the defense under *J.M. v. Payton-O'Brien*, 76 M.J. 782, 787 (N-M. Ct. Crim. App. 2017). When the named victim continued to assert her privilege, the military judge abated the proceedings and sealed the mental health records.

## II. Applicable Law

M.R.E. 513 governs the military's psychotherapist-patient privilege. "Broadly speaking, [M.R.E.] 513(a) establishes a privilege that allows a patient to refuse to disclose confidential communications between the patient and his or her psychotherapist if those communications were made for the purpose of diagnosing or treating the patient's mental or emotional condition." *United States v. Beauge*, 82 M.J. 157, 159 (C.A.A.F. 2022). However, as always, the devil is in the details. To begin with, in *Mellette* this Court held that "diagnoses and treatments contained within medical records are not themselves uniformly privileged under M.R.E. 513." 82 M.J. at 375.

In addition, M.R.E. 513 itself recognizes seven exceptions to the broad psychotherapist-patient privilege. *See* M.R.E. 513(d)(1)-(7). As explained in the Court's majority opinion, there used to be an eighth enumerated exception under M.R.E. 513 which was commonly referred to as the "constitutionally required exception."[1] *B.M*, __ M.J. at __

---

[1] The exception read as follows: "There is no privilege under this rule . . . when admission or disclosure of a communication is

(12 & n.4). However, in 2015, consistent with congressional legislation, the President deleted this exception. Subsequently, in *Payton-O'Brien* the United States Navy-Marine Corps Court of Criminal Appeals (NMCCA) sought to reconcile the revised provisions of M.R.E. 513 with the rights afforded to an accused under the Constitution. The NMCCA explained that (1) by promulgating the new version of M.R.E. 513, Congress and the President were implementing a "policy decision" to protect the psychotherapist-patient privilege "to the greatest extent possible," 76 M.J. at 787, but (2) this privilege, however meritorious, cannot "prevail over the Constitution," *id.* at 787-88. Accordingly, the NMCCA held that when M.R.E. 513 prohibits the production of privileged records, and when this prohibition implicates the constitutional rights of an accused to obtain a fair trial, "military judges may craft such remedies as are required to guarantee [an accused] a meaningful opportunity to present a complete defense." *Id.* at 783. The remedies contemplated by the NMCCA notably included abating the proceedings. *Id.* at 791. As the NMCCA succinctly put it, these remedies were "precise judicial tools necessary to balance [a victim's] privilege against [an accused's] constitutional rights." *Id.* at 792.

### III. Discussion

### A. Certified Issue I

In regard to the instant case, I believe the military judge was placed in an unenviable position. Although she was assiduous in ensuring the clarity and accuracy of her order to the mental health provider, the facility still "dumped in her lap" nonresponsive mental health records that were privileged. Upon conducting her in camera review of the documents and discovering privileged information, the military judge had two options. First, she could have halted her review and invoked the procedures required under M.R.E. 513(e), which deals with determining the admissibility of patient records or communications. Second, she could have halted her review and returned the

---

constitutionally required." M.R.E. 513(d)(8) (2000 ed.). This Court has yet to "decide the precise significance of the removal of this express exception." *Beauge*, 82 M.J. at 167 n.10.

records to the mental health facility as nonresponsive and ordered compliance with the terms of the order. What the military judge could *not* do was continue to examine the privileged records, as she did here. Such a step contravened her authority and the provisions of M.R.E 513. In light of this misunderstanding, I offer the following guidance to those military judges who are confronted with a similar conundrum in the future.

If, in the course of conducting an in camera review of the mental health records of a victim, a military judge discovers that privileged material is commingled with nonprivileged material, he or she should immediately stop reviewing those records. If up to that point, the military judge has not discovered any impeachment material in the records that he or she believes the accused is entitled to receive in furtherance of his right to a fair trial, the military judge should return the records to the mental health facility and order compliance with the order to produce responsive, nonprivileged records. If, however, the military judge has already uncovered impeachment material within the records necessary for the accused to receive a fair trial, the military judge must inform the victim of this discovery and then ask whether the victim wishes to waive the privilege regarding that material. If the victim agrees to the waiver, the military judge should then disclose that material to the parties for potential use at trial. If the victim does not agree to the waiver, the military judge should follow the procedures articulated by the NMCCA in *Payton-O'Brien*, 76 M.J. at 789-92.

The discussion above concerns those situations where a military judge has ordered a mental health facility to produce responsive medical records. However, I am not convinced that this approach to obtaining mental health information is optimal. Simply stated, mental health professionals typically do not have the time to go through sometimes voluminous mental health records and cull out responsive material that is not privileged, and any person to whom they may delegate this task may not possess the required expertise. Because of this unfortunate reality, it is not unusual for commingled records to be produced in response to even clear and narrowly constructed document

requests. As a result, military judges who are confronted with the task of ensuring that an accused has proper access to the nonprivileged mental health records of a victim should perhaps consider alternative approaches.

One approach would be to encourage the victim, the accused, and the government to enter into a stipulation of fact that would address the victim's diagnoses, medications, and treatments. This method presumably would be the quickest and easiest way of ensuring that no privileged material is released in contravention of M.R.E. 513, while also ensuring that the accused has access to information he is entitled to receive in furtherance of his constitutional right to a fair trial. I have my doubts, however, about the extent to which an accused would be willing to rely upon the bare assertions of a victim about the scope and nature of the mental health issues involved, particularly if the accused has no independent means of ensuring the accuracy of the victim's representations. Nevertheless, it still is worth a try.

If efforts to have the victim, the accused, and the government enter into a stipulation of fact is unavailing, another option would be for the military judge to order the victim's psychotherapist to submit an affidavit to the trial court that explicitly *and solely* addresses the victim's diagnoses, medications, and treatments. (A related approach would be for the military judge to pose interrogatories to the psychotherapist that are narrowly tailored to elicit information only about the victim's diagnoses, medications, and treatments.) This is not a foolproof method, particularly in those instances where the psychotherapist is not affiliated with a government mental health facility. However, it may be making the best of a bad bargain.[2]

---

[2] Presumably, a psychotherapist working in a government-operated treatment facility will comply with a military judge's order to provide an affidavit or response to interrogatories as discussed above. However, I recognize that enforcement mechanisms in the civilian sphere can be tricky. In those situations where a civilian psychotherapist practicing in the private sector balks at responding to an order of this nature issued by a military judge, the named victim would have an interest in

Just to tie up loose ends, I would like to make two additional points. First, military judges should not hesitate to place the responsibility on the victim, the accused, and the government to take the initiative in finalizing a stipulation of fact or, in the alternative, drafting the order or the interrogatories that are designed to obtain the necessary information from the psychotherapist. And second, military judges should not hesitate to require the victim, the accused, and the government to raise—and to resolve—issues regarding mental health records early in the court-martial process to ensure that the trial is not unnecessarily delayed. I am hopeful that if this guidance is followed, the chances of encountering a similarly perplexing case where a military judge concludes that it is necessary to abate the proceedings will be significantly reduced.

## B. Certified Issue II

I now would like to turn my attention to the second certified issue. Although I want to underscore from the outset the obvious point that my views are not binding on this Court, I believe it may be helpful to note the following: I conclude that (a) the NMCCA's decision in *Payton-O'Brien* properly held that M.R.E. 513 is still subject to the Constitution, and (b) in seeking to protect the accused's constitutional rights, the NMCCA did not improperly create court-made procedures and remedies. I briefly set forth my reasoning below.

First, the *Payton-O'Brien* case did not reinsert the "constitutionally required" exception that Congress and the President expressly removed. This is apparent in the language of the opinion: "[A]ny application of the former Mil. R. Evid. 513(d)(8) constitutional exception . . . . would force us to ignore the plain language of the rule, the obvious intent of both Congress and the President, and binding precedent. We cannot." *Payton-O'Brien*, 76 M.J. at 787. However, the NMCCA in *Payton-O'Brien* did properly recognize an iron-clad fact: the Military Rules of Evidence cannot supplant or supersede the Constitution of the United States. *Id.* at 787-88. Accordingly, M.R.E. 513 cannot limit

encouraging compliance by the psychotherapist to avoid the potential specter of abatement.

the introduction of evidence that is required to protect the constitutional rights of an accused during trial, such as under the Due Process Clause. *See United States v. Romano*, 46 M.J. 269, 274 (C.A.A.F. 1997) (discussing the military's scheme of hierarchical rights with the Constitution as the highest source and noting that lower sources on the hierarchy may not conflict with a higher source); *see also Herbert v. Lando*, 441 U.S. 153, 175 (1979) ("[e]videntiary privileges . . . must give way in proper circumstances").

As a result of this fact, in each case a military judge must make an individualized determination of whether the constitutional rights of the accused outweigh the interests of the victim that are intended to be protected under M.R.E. 513. *See Holmes v. South Carolina*, 547 U.S. 319, 324-25 (2006) (A rule of evidence abridges the constitutional right to present a defense when the rule " 'infring[es] upon a weighty interest of the accused' and [is] 'arbitrary' or 'disproportionate to the purposes [the rule is] designed to serve.' " (quoting *United States v. Scheffer*, 523 U.S. 303, 308 (1998))). I recognize that the Supreme Court in *Jaffee v. Redmond* "reject[ed] the balancing component of the [psychotherapist] privilege" by noting that "[m]aking the promise of confidentiality contingent upon a trial judge's later evaluation of the relative importance of the patient's interest in privacy and the evidentiary need for disclosure would eviscerate the effectiveness of the privilege." 518 U.S. 1, 17 (1996). However, that pronouncement by the Supreme Court came in a *civil* case with respect to balancing privacy interests against an evidentiary need. In the context of the military justice system, this Court and the lower courts are concerned with the constitutional rights of an accused in a *criminal* case. *See Romano*, 46 M.J. at 274. The Supreme Court has not decided this issue. *See Swidler & Berlin v. United States*, 524 U.S. 399, 408 n.3 (1998) (declining to answer whether piercing the attorney-client privilege is appropriate in "exceptional circumstances implicating a criminal defendant's constitutional rights"). Moreover—and this is an important point that I want to emphasize—if the NMCCA's *Payton-O'Brien* approach is followed, then *a victim's privileged material will never be disclosed without the consent of the patient/privilege*

*holder*. Therefore, I believe *Payton-O'Brien* provided the appropriate framework concerning M.R.E. 513 and an accused's constitutional rights.

And second, it is true that the lower court in *Payton-O'Brien* set forth procedures and remedies that a military judge may employ when handling this type of issue, despite the fact that M.R.E. 513 is silent on this point. However, it is an unremarkable proposition that courts must sometimes develop mechanisms to protect an accused's constitutional rights at trial if no mechanism is provided in applicable statutes or rules.[3] Otherwise, the accused's constitutional rights would be hollow.

Despite my views on these issues, I agree with the Court's majority opinion that we cannot provide the relief that the named victim seeks due to standing, ripeness, and mootness grounds. I therefore join the Court's opinion in full.

---

[3] This Court has created procedures and remedies when a statute or rule does not. *See, e.g.*, *United States v. Moreno*, 63 M.J. 129, 142-43 (C.A.A.F. 2006) (establishing prospective rules setting forth timelines for post-trial processing and identifying the remedies "depend[ing] on the circumstances of the case"); *Toohey v. United States*, 60 M.J. 100, 101-02 (C.A.A.F. 2004) (recognizing that servicemembers have a due process right to speedy appellate review and adopting factors to evaluate whether appellate delay violates an appellant's due process rights).

Judge SPARKS, with whom Judge JOHNSON joins, concurring.

I agree with the Court's disposition of this case. I write separately only to remind military trial judges that they have the tools available to them in the *Manual for Courts-Martial, United States,* to address the issues arising from a request for records of diagnoses or treatment plans of victim witnesses who have been or are being treated by a mental health provider. In *United States v. Mellette*, this Court held that "diagnoses and treatments contained within medical records are not themselves uniformly privileged under M.R.E. 513." 82 M.J. 374, 375 (C.A.A.F. 2022). The Court's majority went on to clarify that "documents that are not themselves communications may be partially privileged to the extent that those records memorialize or otherwise reflect the substance of privileged communications." *Id.* at 379.

Before pursuing a determination on a motion to compel records of diagnoses and treatment, the military judge must be mindful that, although such records might not be privileged, they touch upon a patient's medical privacy interests. Considering such interests, the military judge should first look to Rule for Courts-Martial (R.C.M.) 703(e)(1): "Each party is entitled to the production of evidence which is relevant and necessary." Thus, the party requesting production must first establish that the requested records exist and that they are relevant, not cumulative, and would contribute to the presentation of the party's case in some positive way on a matter in issue. R.C.M. 703(e)(1) Discussion. Assuming the defense can shoulder this burden, the military judge must determine where the records are located and a process for obtaining them. At this point, it may not yet be known whether the records requested are partially privileged or not privileged at all as described in *Mellette.* The military judge may wish to consult the regulation of discovery guidance provided in R.C.M. 701(g)(2). There she may find authority to deny, restrict, or defer discovery or inspection of records "or make such other order as is appropriate." *Id.* Further, "upon motion by a party, the military judge may review any materials in camera,

and permit [a] party to make a showing . . . in writing to be inspected only by the military judge in camera." *Id.*

This guidance suggests that the privilege holder, with the assent of a party, might simply ask the military judge to examine the health records to determine whether there are nonprivileged records of diagnoses and treatment. However, the hope would be to proceed in a manner that relieves the military judge of the burden of wading through what might be a high volume of mental health documents. Other, more efficient means might be available. For instance, the military judge may ask the parties and the privilege holder whether they can reach a stipulation of fact concerning any mental health diagnoses or treatment the patient may have received. In the alternative, the parties could be amenable to a stipulation of expected testimony of the therapist. Finally, the military judge could explore the parties' interest in developing interrogatories for the therapist.

It is not my intent to mandate how military trial judges should approach the issue of mental health records in light of *Mellette*. Nor can I pretend to anticipate the innumerable issues that might otherwise arise in a given case. I simply wish to reiterate that, whatever process is decided upon, it should remain sensitive to the fact that mental health patients have a medical privacy interest beyond whether certain information is privileged.